Jenkins, District Judge.
This suit was brought at law by Willet B. Jenks, since deceased, to recover the amount of a certificate of deposit, of which a copy follows:
“ No. 26,161. The First National Bank of Monmouth, Ill.
“$10,000. Nov. 5th, 1881.
“Wm. M. Gregg has deposited in this bank ten thousand dollars, payable to the order of himself six months after date, on return of this certificate.
“B. T. D. Hubbard, Cashier.”
Endorsed: “Pay to bearer. W. M. Gregg.”
The case, as disclosed by the record, was this : The First National Bank of Monmouth was organized under the national banking law in the year 1863. The period of legal existence granted by law was about to expire, and could not be extended. Thereupon, in June, 1882, the bank went into voluntary liquidation, and adopted the necessary legal *642 steps to wind up its affairs. A new bank with the same name was formed by substantially the same persons who owned the stock of the former bank, and with the same persons as officers who held similar positions in the old bank. The stockholders of the old bank distributed among themselves the accumulated profits of this business, amounting to 66 per cent, of its capital. On the 5th day of July, 1882, the old bank transferred to the new bank its bank building, and all the fixtures, books, and appurtenances of the bank, its redemption fund with the United States treasurer, its bills receivable as shown by its books, and, in consideration thereof, the new bank agreed in writing to pay off and discharge all the debts and liabilities of the old bank to its depositors of all kinds upon book account and certificates of deposit “ to the extent and amount as shown by the books,” whenever and as they should be demanded. The new bank continued business until April 8, 1884, when it closed its doors, being compelled thereto by the acts of its cashier, who proved a defaulter to the amount of upwards of $100,000.
The certificate of deposit upon which suit is brought was issued by the cashier of the old bank, without consideration, without deposit of the amount therein stated by Gregg or by any other person, and solely by way of margins to speculative transactions between Hubbard, the cashier, and the payee, William M. Gregg, or his firm of Gregg, Son & Co., of Chicago. The certificate was not entered upon the books of the old bank. The bank number borne by the certificate was in fact the number of a certificate issued on the 23d day of February, 1881, to one Langdon, for the sum of $100, and which was duly entered upon the books, and paid by the bank shortly after its issue, and before the date of the Gregg certificate. The certificate here in question was first pledged by Gregg, Son & Co., on September 6,1883, to the Continental National Bank of Chicago, as collateral to a loan of $10,000. That loan was paid in October, 1883. It was then used on December 27, 1883, as collateral with the same bank for a loan which was paid January 26, 1884. It was again pledged by Gregg, Son & Co. to the Continental National Bank as collateral to two notes of that firm, each for $5,000, payable on demand; one dated March 7, 1884, and the other dated March 24, 1.884. After the loan of December 27, 1883, and before its payment, the cashier of the Continental National Bank, becoming suspicious of the certificate by reason of its age, had an interview concerning it with Hubbard, the cashier. He asked Hubbard “if the certificate was good; if it was genuine; and he said it was a genuine certificate;” that it was a private matter with Gregg, and was connected with his (Gregg’s) family affairs. Payment of the certificate was demanded of the new bank on the 8th day of April, 1884,—the date of its failure,—and the certificate protested for nonpayment on the following day. On the 11th day of April, 1884, a transaction was had by which Willet B. Jenks, the intestate of the plaintiff in error, paid to the Continental National Bank the amount of the indebtedness of Gregg, Son & Co., and received from the bank the certificate of deposit in question.
*643 The right to recover upon the certificate is claimed upon the ground that the Continental National Bank was a bona fide holder for value of the certificate, and that the defendant bank is estopped to assert either the invalidity of the certificate, or its nonliability therefor by reason of the declarations of its cashier to the cashier of the Continental National Bank upon the faith of which the loans of March 7th and March 27th were made; and that Jenks, by purchase from the bank, although after dishonor of the certificate, stands in the shoes of the bank, and takes its title to the' certificate, unaffected by equities as between the maker and Gregg.
The contention on the part of the defendant is that the certificate was issued by the former First National Bank of Monmouth, and not by the defendant bank; that the latter never assumed its payment, the certificate not appearing upon the books of the old bank; that the certificate was fraudulent in its inception, and of no effect in the hands of Gregg, the payee; that the Continental National Bank took it after its maturity, and charged with the equities attaching to it in the hands of Gregg; that the old bank could not be estopped by the declarations of Hubbard, made after the bank had ceased to exist; that the defendant bank is not estopped, because, among other reasons, the declarations only went to the genuineness of the certificate as the paper of the former bank, and not to the liability of the defendant bank thereon; and that the transaction between the Continental National Bank and Willet B. Jenks was a payment by Jenks of the debt of Gregg, Son & Co. at their request, and not a purchase of that debt and its collateral. The cause was tried by the court without the intervention of a jury, and the issues found in favor of the defendant.
The record declares that at the close of the evidence the plaintiff submitted to the court certain propositions of law, and requested the court to hold them as the law of the case, but the court disregarded and overruled “certain of the same,” and found the law and the facts in the case as follows. Then follows the opinion of the presiding judge, reciting certain facts stated to be conceded, and holding that the certificate was fraudulently issued; that the defendant bank was liable for the valid debts of the old bank; that the certificate was a valid security in the hands of the Continental National Bank by reason of the estoppel stated above; and that the transaction between Willet B. Jenks and the Continental National Bank was a payment by the former of the debt of Gregg, Son & Co. at their request, a payment, cancellation, and surrender by that bank of that firm’s notes held by it, and that Jenks took a new note from the firm for the money paid by him, and that he did not succeed to the right of the Continental National Bank, but held the certificate as collateral to the new note of Gregg, Son & Co., taken by him after payment by him of their debt, after maturity of the certificate, and after its dishonor; and so, in his hands, the certificate stood charged with all the equities attaching to it in the hands of Gregg.
The findings of a trial court, whether general or special, have the effect of a verdict of a jury. Rev. St. § 649. When the finding is spe *644 cial, the review on appeal may extend to the sufficiency of the facts found to support the judgment. Id. § 700. It may well be doubted whether the opinion of the judge which here is said to constitute the^ special findings of fact can be so considered. Dickinson v. Bank, 16 Wall: 250. The opinion states certain concessions of facts. It also advances by way of argument certain other facts said to be proven by the evidence, and also certain evidence as grounds for the conclusion of the court. The practice adopted by counsel in this case of seeking to have the opinion of the court fulfill the office of a finding is not to be commended. The special finding of the statute is a specific statement of the ultimate facts proven by the evidence, determining the issues, and essential to sustain the judgment. It corresponds to the special verdict of a jury, and should be equally specific and comprehensive. It should declare all the ultimate facts established by the evidence, so that if they do not in law warrant the judgment, an appellate tribunal may direct such judgment thereon as the law adjudges upon the facts determined, and without the need of a new trial, as was done in Ft. Scott v. Hickman, 112 U. S. 150, 5 Sup. Ct. Rep. 56. Treating the opinion, however, as a special finding of facts, the court below found as conceded facts that, after dishonor of the certificate in question, the Continental National Bank demanded of Gregg, Son & Co. payment of the loan, for which it held the certificate as collateral;-that Jenks, at the request of Gregg, paid the debt; that the notes of Gregg, Son & Co. were canceled and surrendered; that the certificate was delivered to Jenks, who took notes from Gregg, Son & Co. for the amount of the principal of the loan paid by him, and held the certificate as collateral to such notes. The court also found as proven by the evidence that Jenks was a brother-in-law of Gregg, and acted for him, and to protect his credit; that Jenks “did not even keep alive the bank paper for which the certificate stood as security in the hands of the Continental National Bank, but allowed that to be canceled, and merely took Gregg, Son & Co.’s paper as a new transaction between himself and Gregg, Son & Co., the transaction being in effect a loan by Jenks to Gregg, Son & Co. of $10,000, with this certificate of deposit as security.” This finding is challenged as not sustained by the evidence, and we are urged to so declare. We have no authority to do that. Treating the opinion as a special finding, we are only at liberty to consider whether the facts found in law support the judgment. The findings of the trial court upon questions of fact are conclusive. We are not permitted to examine the evidence to ascertain whether the finding of fact be thereby justified. Copelin v. Insurance Co., 9 Wall. 461, 467; The Abbotsford, 98 U. S. 440, 443; Zeckendorf v. Johnson, 123 U. S. 617, 8 Sup. Ct. Rep. 261. The review permitted extends only to the question whether the facts found support the judgment rendered. Tyng v. Grinnell, 92 U. S. 467.
It cannot be seriously urged that, the facts being as found, the judgment is unwarranted. The question of the liability of the defendant hank hinged upon the further question whether Jenks stood in the light *645 of an innocent purchaser for value. The court held that the Continental National Bank was a bona fide holder for value, taking the certificate upon representations of the cashier of the defendant bank, which worked an estoppel. Conceding that a bona fide holder for value of commercial paper can, by endorsement and delivery after maturity of the paper, confer his title upon a third person having knowledge of its inherent imperfections, it is found as a fact that this was not done. It is conclusively determined that Jenks paid Gregg’s debt; that the notes were canceled and surrendered, not endorsed or transferred by the Continental National Bank. For the amount paid, Jenks took notes of Gregg, Son & Co. running to himself, with the certificate as collateral. At the time of the payment by him the defendant bank had failed; the certificate had been protested for nonpayment. He took it, therefore, with notice of dishonor, and cannot be held an innocent purchaser. In view of the finding that this certificate was fraudulently issued, and was without consideration to the knowledge of Gregg, who was found by the court to have been “a knowing and willing party to the fraud” sought to be perpetrated by the issuance of this certificate, one taking the certificate from him after dishonor cannot be accounted an innocent holder. The judgment was therefore justified by the finding.
In this view it seems unnecessary to consider the other errors assigned. If the exceptions were sustained, the substantial facts would remain unquestioned and unquestionable that "this certificate was fraudulently issued, and without any consideration, to Gregg’s knowledge, and that Jenks took it as collateral to Gregg’s debt after its dishonor. These facts are sufficient to bar a recovery. The admission of immaterial evidence not affecting that finding could not, therefore, injure the plaintiff, and constitutes no ground for reversal, (Mining Co. v. Taylor, 100 U. S. 37; Hornbuckle v. Stafford, 111 U. S. 389, 4 Sup. Ct. Rep. 515;) nor would the reception of incompetent evidence going to that finding, when there is competent evidence uncontradicted on the same point, (Cooper v. Coats, 21 Wall. 105.) The judgment is affirmed.
Mr. Justice Harlan was not present when this decision was announced, but he participated in the hearing and decision of the case, and concurs in the opinion.