## AMERICAN NAT. BANK OF DENVER v. WATKINS.*

### (Circuit Court of Appeals, Seventh Circuit. October 7, 1902.)

### No. 783.

1. TRIAL TO COURT—SPECIAL FINDINGS.

A special finding made by a circuit court, where a jury is waived by stipulation, pursuant to Rev. St. § 649 [U. S. Comp. St. 1901, p. 525], should state the ultimate facts on which the law must determine the rights of the parties, and should not contain a statement of the evidence.

2. SAME—CONCLUSIVENESS OF FINDINGS ON APPEAL.

A special finding which states the ultimate facts is conclusive upon the appellate court, even though it contains, in addition, statements of evidence and inferences therefrom.

3. SAME.

A special finding that plaintiff was not a bona fide purchaser of a note for value, but took the same subject to any defense affecting the consideration, is one of fact, and not reviewable on appeal as a conclusion of law.

4. PROMISSORY NOTES—FAILURE OF CONSIDERATION.

Defendant was an indorser on notes of a third party, which were also secured by collateral, and by a junior mortgage on real estate of the maker. At defendant's suggestion, but without any agreement that they should be acquired for his benefit, the payee purchased the prior mortgages, some of which were in process of foreclosure, and bid in the property thereunder, subject to a first mortgage which it also held. Subsequently a written contract was made between the parties, by which defendant executed his own notes, covering the entire indebtedness of his principal, and the amount expended by the payee in acquiring the property and liens; and the payee agreed to convey the property, and assign all the securities held by it, including the first mortgage, to defendant, and a deed was executed and deposited in escrow to await the termination of certain litigation affecting the title. In this situation the payee undertook, of its own volition, to foreclose the first mortgage, and in doing so lost title to the property, and also the proceeds of the mortgage, through the insolvency of its agent. Held, that the contract was one of bargain and sale of the property and securities, which bound the seller to convey as good title as it then had, and that its loss of title constituted a partial failure of the consideration for defendant's notes.

5. SAME—DEFENSES—PARTIAL FAILURE OF CONSIDERATION.

Under the modern American rule, a partial failure of consideration may be pleaded as a defense in an action at law on a note.

6. APPEAL—REVIEW—HARMLESS ERROR.

A judgment will not be reversed for technical errors in rulings on the admission of evidence which were not prejudicial.

In Error to the Circuit Court of the United States for the Eastern District of Wisconsin.

This action is brought to recover a balance of $6,000 claimed to be due upon a note of $16,000, dated January 20, 1892, made by the defendant in error to William Barth, payable four years after date. Barth was president of the City National Bank of Denver, and it is alleged that he transferred it to the bank, which in turn transferred it to the plaintiff in error. The defense is: First, that the plaintiff in error is the successor of the City National Bank, taking its assets and assuming its obligations, but did not take the note as a purchaser for value; second, that the City Bank was the real beneficiary and payee of the note, the consideration for which note was the execu-

---

* Rehearing denied January 6, 1903.

¶ 5. See Bills and Notes, vol. 7, Cent. Dig. §§ 1373, 1374.

tion and delivery by Barth and the City National Bank of Denver to Watkins, prior to the maturity of the note, of a good, sufficient, clear, and perfect title to certain described real estate in the county of Huerfano, Colo.; that neither Barth, nor the City National Bank, nor the plaintiff in error, nor either of them, have conveyed or offered to convey such title, but have refused so to do, whereby the consideration for the note has failed; and that Watkins had paid upon the note the sum of $10,000. A jury was waived, and the cause was tried to the court. The trial judge filed special findings of fact and of law as follows:

"First. On or about the 20th day of January, 1892, at Denver, in the state of Colorado, the defendant, Samuel W. Watkins, executed and delivered unto one William Barth, then and now a resident of said state, his certain promissory note in writing, dated on said day, whereby he promised to pay to the order of the said William Barth the sum of $16,000 four years after the date of said note, together with interest thereon at ten per cent. per annum from the date of said note until paid.

"Second. The said defendant paid on the principal of said note on the 29th day of January, 1896, the sum of $10,000, together with all interest on said note to said date; and the time of the payment of the balance of the principal of said note without interest was extended to the 15th day of February, 1897, since which date no payment of principal or interest thereon has been made by or on behalf of said defendant.

"Third. The said William Barth, payee in said note, was at the date of the making thereof, and for some time prior thereto and thereafter, president of the City National Bank of Denver, and received the said note for the use and benefit of said bank. The plaintiff therein some time during the month of May, 1894, became the holder of said note, as successor to the said City National Bank of Denver, the assets and liabilities of which said National Bank of Denver the plaintiff assumed, and then obtained and now holds the said note subject to any defense existing in favor of said defendant affecting the consideration thereof. The said plaintiff did not acquire said note as a bona fide holder for value, without notice of the equities subsisting between the parties thereto.

"Fourth. The above-mentioned note was executed and delivered under the facts and upon the consideration as follows, and not otherwise: On and prior to March 28, 1891, the defendant was obligated to the said City National Bank as surety or indorser on several notes made by one T. F. Martin, amounting in the aggregate to about $20,000, for which said bank further held as security certain collaterals given by said Martin, and also a trust deed upon certain real estate, which was subordinate, however, to three prior trust deeds or mortgages upon such real estate. Such indebtedness being unpaid, the defendant suggested and requested that the bank purchase in the prior incumbrances on the real estate and certain collaterals therewith, held by Thurlow, Hutton & Williams, representing that the value of the property would more than repay the debt and investment, and that the defendant would furnish $6,000 of the purchase money required for that purpose, to be applied in the purchase of a specific collateral thereof, not involved in the present controversy. Accordingly, on March 28, 1891, such purchase was made in the name of said William Barth, as purchaser, through one J. P. Heisler, acting on behalf of said bank as its attorney, the price paid being $17,475.60, of which $6,000 was paid by the defendant, and the remaining sum by the bank; and pursuant to foreclosure notices then pending upon the second and third mortgages, on March 30, 1891, the real estate thereunder was bid in by said attorney in the name of said Barth, and conveyance so taken thereupon. By such transaction title in fee simple was acquired by said Barth (together with other matters) for the use and benefit of said City National Bank of Denver, to the following described real estate situated in the county of Huerfano, state of Colorado, as described in such second and third mortgages and foreclosed as aforesaid, to wit: All the lands, tenements, rights, titles, interest, and privileges of, in, and to the Lake Miriam Ditch, and all reservoirs in connection therewith, together with lots 1, 5, 9, and 11 in block 50, and 25 feet off the south side of lot 5 in block 33, and lots 7, 11, 12, 13, and 14 in block 4, and all in the town of Walsenburg, Huerfano

county, Colorado, according to a map of the same now on record in the recorder's office of said Huerfano county, Colorado, together with the south half of the northeast quarter and the north half of the southeast quarter of section 13, township 28 south, of range 67 west; and said Barth, for said bank, further became the owner of a $5,000 note of said Martin, and a trust deed securing the same, upon the same premises above described, which constituted a first lien, but was not included in the foreclosure. Said Barth owned said above-described real estate and prior mortgage, with no promise or obligation on his part or on the part of said bank to sell or otherwise dispose of the same to said defendant. On or about the said 20th day of January, 1892, an agreement in writing was entered into respecting the same, as follows, to wit:

" 'Memorandum of an agreement made and entered into this 20th day of January, 1892, as follows: The party of the first part herein, being William Barth, the City National Bank, and John R. Hanna, of Denver, Colorado, acting either individually or collectively, as the case may be, and the party of the second part herein being S. W. Watkins, of Walsenburg, Colorado. Whereas, during 1890, and possibly at other times, one T. F. Martin, and said S. W. Watkins became indebted to the said party of the first part in the sum of about twenty-one thousand ($21,000) dollars, which was then or afterwards secured, in part only, by certain collaterals and trust deeds on certain property situated in Huerfano county, Colorado; and whereas, the said property so given as security or part thereof had also previously been given as security for certain indebtedness due from said Martin to Thurlow, Hutton & Williams, or some one or more of said persons, of Colorado Springs, Colorado, the evidence of indebtedness of said Martin to said T., H. & W., and the collaterals which belong to or were connected therewith, being afterwards bought by the said party of the first part herein, about March 30, 1891, for the sum of about $17,500, said second party having advanced part of the same, so that there is due to said first party on account of matters above mentioned, with interest thereon, at this time, about thirty-five thousand four hundred and thirty-seven and twenty-two one-hundredths ($35,437.22) dollars; and whereas, certain of the said collaterals given to secure the debt due to said first party, and certain collaterals and real estate given to secure the debt formerly due to T., H. & W., and afterwards purchased by said first party, having been foreclosed and sold, the same having been bought in by the said first party: Now, therefore, it is agreed that said second party shall execute his note, payable to Mr. William Barth, one of the said first parties above named, for the full amount of thirty-one thousand ($31,000) dollars, and delivered to said first party upon the execution thereof, cash in hand, and notes as follows, to wit: One note due in two years for $15,000, one note due in four years, $16,000, with interest at ten per cent. per annum; pay cash to the amount of $4,437.22; making a total of $35,437.22,—and that said first party shall convey to said second party the real estate which has been foreclosed by reason of its heretofore having been given as security for any of the above indebtedness, and bought in by said first party, also the lots in Tourist City heretofore deeded by the Tourist City Town Company to said Hanna, and that said second party shall give a trust deed thereupon, also upon the north half of the N. E. quarter and the E. half of the N. W. quarter of Sec. 13, Tp. 28 S., R. 67 west, &c., to secure the payment of said notes, for $31,000, and that upon payment of the same the several collaterals and other notes payable to said first party, and held on account of above matters, shall be thereupon assigned, without recourse on said first party, to the said party of the second part, and delivered to him as his own property, the said real estate to be conveyed to said second party by deed of said first party of date January 19th, 1892, and by trust deed of said second party dated January 20th, 1892. The collaterals above mentioned being scheduled as follows, to wit: 1,197 shares of stock in the Walsenburg Electric Light Company; 50 shares of stock of the Pythian Temple Association; 155 shares of the stock of the Tourist City Town Company; 720 shares of stock in the Walsenburg Water Company; three notes of T. F. Martin, each dated February 9th, 1891; one for $5,000, due in six months; one for $5,000, due in one year; one for $10,000, due in 18 months; said notes being secured by a trust deed to J. P. Heisler,

trustee, which is recorded in Book 16, at page 264, of the records of Huerfano county; said notes being also given as evidence of indebtedness, which indebtedness is also evidenced by four other notes, upon the principal of which there is a payment of $1,000; said four other notes being also included in the property here scheduled, and being described as follows (each signed by T. F. Martin and S. W. Watkins): One dated March 21st, 1890, for $2,000; one dated May 21st, 1890, for $5,000; one dated May 31st, 1890, for $2,000; one dated June 7th, 1890, for $12,000,—with various endorsements and credits thereon. Also the following notes: The note of the Tourist City Town Company, dated December 1, 1897, for $8,670.00, on which a credit of about $4,000 given by reason of the sale of certain property to the holder of said notes during the summer of 1891; one note of Louis De Camp, dated April 16th, 1888, for $600; one note of L. Z. Watkins, dated July 8th, 1887, for $100; one note of Gonzalez, dated April 5th, 1888, for $160; one note of James O. Taylor, dated Aug. 20th, 1887, for $160. Also three notes signed by T. F. Martin, which are secured by trust deeds on certain lands in said Huerfano county and lots in said town of Walsenburg, two of said trust deeds having been foreclosed, which embraces all the said lands and lots, and upon said notes proper credits have been made; said notes being described as follows: One dated April 28, 1887, for $10,000; one dated May 25th, 1890, for $2,500; one dated February 26, 1886, for $5,000; one interest note dated February 26, 1886, for $300, with various credits thereon. Also upon the payment of said notes for $31,000 herein first mentioned, and the interest thereon, by said second party to the first party, all the papers, records, documents, pertaining to said lands above referred to, or to the stocks, notes, and other property herein scheduled, shall also be delivered to said second party as his own property, to be dealt with as he may deem best. All the above subject to all the suits by said Martin against said property or the payment of any of said notes; the proceeds, if any, to go to the credit of said Watkins.

" 'Executed in duplicate.

" 'Denver, Colorado, January 20, 1892.

" 'The City National Bank of Denver,
    " 'By Wm. Barth, President.
" 'Wm. Barth.
" 'John R. Hanna.
" 'S. W. Watkins.'

On the same day the defendant executed to said bank two notes, one for $15,000, and the other (being the one in suit) for $16,000, which were both delivered to said bank; and said defendant paid in cash to said bank the sum of $4,437.22. For the purpose of carrying out this contract, as a part of the same transaction, Barth and Hanna, representing the bank, made a deed to the defendant, dated January 19, 1892, reciting the consideration of $36,000, and that they 'have granted, bargained, sold, and conveyed, and by these presents do grant, bargain, sell, and convey, unto the said party of the second part, his heirs and assigns, forever, all the following described lots and parcels of land,' covering all the property, the title to which Barth or Hanna had acquired by the above-mentioned foreclosure, including the land hereinbefore specifically described on page 3 of these findings, 'together with, all and singular, the hereditaments and appurtenances thereunto belonging or in any wise appertaining, and the reversion or reversions, remainder or remainders, rents, issues, and profits, thereof, and all the estate, right, title, interest, claim, and demand whatsoever of the said party of the first part, either in law or equity, of, in, and to the above-bargained premises, with the hereditaments and appurtenances, subject, however, to suits now pending against said property; the proceeds therefrom, if any, to be credited to said Watkins.' As a part of the same transaction, the defendant executed a trust deed to the same premises, dated the 20th day of January, 1892, to secure the payment of the two notes mentioned above, and which deed contains a covenant that at the time of the making thereof he was well seised of the premises in fee simple, and that the same were free and clear of all liens and incumbrances whatever. The notes above mentioned were delivered to said bank, and the deed and trust deeds above mentioned were deposited in escrow with J. P. Heisler, who

on the 12th day of February, 1892, signed a memorandum of escrow, in the words and figures following:

### 'Memorandum.

" 'Memorandum of escrow in accordance with the contract accompanying this memorandum, which is dated January 20th, 1892, between William Barth, the City National Bank, and John R. Hanna, of the first part, and S. W. Watkins, of the second part, to .wit, the deed of the property by first party to said second party has been executed, and the notes herein mentioned, to wit, for the sum of thirty-one thousand dollars, and has been executed by said second party, also the trust deed herein specified to secure the same; but it is understood that the said deed of conveyance made by said first parties, also the trust deed made by said second party, shall be held by John P. Heisler, and not delivered or recorded until such time as the litigation over the property in said deeds mentioned shall be determined, or until the parties executing said deeds may otherwise determine so to deliver or record the same; that said notes to the amount of $31,000 shall, and are hereby delivered to the said party as of full force, and the respective copies of the agreement mentioned and hereto annexed, with a copy of this memorandum, is delivered to the respective parties as evidence of what has been entered into by them and is to be carried out. Also the notes are delivered and said sum of $4,437.22 has been heretofore paid by said second party to said first party.

" 'Denver, Colorado, February 12, 1892.

" 'Executed in triplicate. Agreed to by all parties.

" 'J. P. Heisler, Atty.'

"The papers so deposited in escrow are still in the possession of Mr. Heisler. The litigation referred to in said escrow receipt was a suit brought by the mortgagor, Martin, against Barth, respecting the title under the foreclosure, and was finally determined in favor of said Barth on or about February 26, 1894. The value of the premises herein before specifically described appears from the evidence to have been $25,000.

"Fifth. After the making of the said agreement of January 20, 1892, said William Barth, being the holder and owner as aforesaid of the note of Martin for $5,000, and of the first mortgage or trust deed upon the premises described as aforesaid, securing said note, some time in the month of March, 1892, instituted proceedings to foreclose said first mortgage or trust deed by advertisement, and caused notice to be given of the sale thereof on April 11, 1892, the said Heisler acting as attorney for the said Barth therein; and thereupon the said Heisler attended at the time and place so appointed for said sale, the said defendant being present with him. Bids were made thereupon by said Heisler in behalf of Barth and the bank, and by a representative of one W. N. Coler, who was interested in the Walsenburg Waterworks, the reservoir connected with which was situated on said land. The sale was made by the sheriff of Huerfano county as successor in trust under the trust deed, and at the sale Heisler, in the name of Barth, as owner of the note, demanded that the sale be stopped, and tendered the note which was secured by the trust deed, with the memorandum attached thereto, signed by Heisler in the name of Barth, stating that the note had been fully paid. The sheriff refused to stop the sale, and the bidding proceeded; the two highest bids being made in behalf of Barth and the bank, and the next highest in the name of Coler; the bids being slightly in excess of $15,000. Heisler demanded a deed of the property from the sheriff, and tendered in payment for the same the note secured by the trust deed, and the other notes secured by subsequent trust deeds on the property; but the sheriff refused to make a deed unless the whole amount bid was paid in cash, which Heisler declined to do, and the sheriff thereupon made a deed to said Coler, and offered to pay Heisler the sum of about $6,000, the amount due on the note secured by the trust deed under which the sale was made; refusing, however, to pay the surplus over and above said sum to said Heisler or the representative of said bank. Heisler, on behalf of the bank, refused to accept the $6,000. Thereupon the bank brought suit to set aside this sale; said Barth being plaintiff therein, and Coler and the sheriff being made defendants. The litigation finally resulted in

a decision against the plaintiffs, and affirming the said sale, whereby the title to the property was lost by the said bank and its representatives. Subsequently the bank demanded payment of the $6,000 supposed to be in the hands of the sheriff who made the sale, but was unable to collect the same or any part thereof. The defendant was cognizant of all the proceedings aforesaid, but it does not satisfactorily appear from the proofs that he either directed or requested the bringing of such foreclosure. He was present at the sale by invitation of the attorney, but gave no directions in respect thereto. In the litigation referred to, to set aside the sale thereupon, the defendant participated both as a witness for the plaintiff, and by the employment of counsel to assist therein the counsel on the part of the bank, but not otherwise. Through such proceedings the title to the property in question was lost to the bank, and it became unable to convey the title thereof to the defendant in accordance with the agreement before mentioned, and the $6,000, being the amount of the first mortgage note and interest, was also lost as aforesaid. And I find nothing in the conduct of the defendant in respect thereto to charge him with responsibility for the loss so incurred.

"Sixth. On January 29, 1896, before the final determination of the suit aforementioned to set aside the said sale by the sheriff, the defendant having paid the note in suit, except the sum of $6,000 reserved thereupon, the plaintiff bank gave to the defendant a receipt thereupon as follows, to wit:

" '$10,800.                              Denver, Colorado, January 29th, 1896.

" 'Received of S. W. Watkins the sum of ten thousand eight hundred ($10,800) dollars, to be applied upon and as part payment of a certain promissory note dated January 20th, 1892, payable to the order of William Barth, executed by S. W. Watkins, due four years from the date thereof, which said payment appears as an indorsement on said note of this date; the balance due on said note, amounting to six thousand ($6,000) dollars, to be carried without interest until the final determination of the suit of William Barth vs. W. N. Coler and Walter A. O'Malley, now pending in the supreme court of the state of Colorado.

" 'Executed in duplicate.

" 'The American National Bank of Denver,
" 'By John R. Hanna, Prest.'

"And the suit referred to was finally determined by the aforementioned adverse decision of the supreme court of Colorado on June 24, 1897, and the consideration failed, at the least, for said unpaid balance of the note in suit.

"And as conclusions of law thereupon the court finds that the defendant is entitled to judgment dismissing the action, with costs in favor of the defendant. Let judgment be entered accordingly.

"[Signed]                              Wm. H. Seaman, Judge."

The plaintiff in error (plaintiff below) filed its exceptions to such findings as follows:

"(1) The said plaintiff excepts to the refusal of the court to make the findings, and each of them, requested by the plaintiff.

"(2) The plaintiff excepts to that portion of the third finding of fact which reads as follows: 'And then obtained and now holds the said note subject to any defense existing in favor of said defendant affecting the consideration thereof. The said plaintiff did not acquire the said note as a bona fide holder for value, without notice of the equities subsisting between the parties thereto.' For the reason that the same is a conclusion of law, and is not supported by the evidence given on the trial of said cause.

"(3) The plaintiff excepts to that part of the fifth finding of fact reading as follows: 'And I find nothing in the conduct of the defendant in respect thereto to charge him with responsibility for the loss so incurred.' For the reason that the same is a conclusion of law, and is not supported by the evidence on the trial of this cause.

"(4) The plaintiff excepts to the conclusion of the court that the defendant is entitled to judgment, for the reason that the same is not supported by the findings of fact, and is contrary to the evidence introduced on the trial of said cause, and the law applicable thereto."

Thereupon judgment was entered in favor of the defendant in error, and is brought here for review.

The judge of the court below filed an opinion in the cause as follows:

"The suit is for recovery of the principal sum of $6,000, and interest thereon remaining unpaid, upon a note for $16,000 made by the defendant January 20, 1892, payable to the order of William Barth, who was president of the City National Bank of Denver, and received the note for the use and benefit of the bank. The plaintiff became the owner as successor to the assets and liabilities of the former bank, and holds the note subject to any defense existing in favor of the defendant, affecting the consideration. The answer sets up as a defense failure on the part of the payee to convey certain real estate in accordance with a contract of even date with the note; such real estate being then owned by the payee, and conveyance thereof by 'a good, sufficient, clear, and perfect title' being alleged as the consideration of the note.

"The testimony establishes, in substance, the following transactions as constituting the consideration of this note, together with another of like date for $15,000: Prior to March, 1891, one T. F. Martin was indebted to the City National Bank on sundry notes, amounting to about $20,000, upon which the defendant was an accommodation indorser; and the bank held as further security a mortgage given by Martin upon real estate holdings; which security was subordinate, however, to prior mortgages, being the fourth mortgage upon some of the property. When the defendant became indorser he was contemplating the purchase of an interest in the Martin properties, but later became dissatisfied with the state of affairs, and then urged upon the bank the purchase of the prior mortgages and collaterals outstanding against Martin, which were in the hands of Thurlow, Hutton & Williams, assuring the bank of the safety of such further investment, promising to advance a portion from means in his hands, for which he was to take the title to certain parcels of the real estate; and undoubtedly it was his intention to thus obtain an arrangement for securing himself as indorser. Thereupon Mr. Barth and Mr. Hanna, on behalf of the bank, purchased the prior mortgages and collaterals so held against Martin, bidding in the properties at foreclosure sales as previously advertised—that of the collaterals held on March 29, 1891, and of the premises under the second and third mortgages held on March 30, 1891; taking assignment of the first mortgage, which is the subject of this controversy. Of the investment thus called for, $6,000 was furnished by the defendant, and was, by written agreement on the part of the bank, applied for the purchase by the defendant of a specific portion of the mortgaged property, not in controversy here; and the new investment of the bank was about $11,500. Soon after the foreclosure sales of March 30th, two suits were commenced by Martin against Barth (the nominal bidder) to set them aside. At this stage of the transaction, and up to January 20, 1892, it was clear that the legal ownership of all these purchases from and through Thurlow, Hutton & Williams was vested in the bank, through its representatives; and, excepting as to the specific portion above mentioned, no express agreement appears between the bank and the defendant for the latter to have ownership of the property upon any terms. Since the hearing I have re-examined all the depositions in evidence, and the recitals of negotiations and conversations on the part of and with the defendant which led up to the purchase contain no stipulation or provision on one side or the other for his assumption of the purchase, aside from the single portion mentioned; and the fact of such express agreement in that instance would have called for a showing of strong equitable consideration before any parol understanding could have become admissible even for the protection of the defendant as indorser. On the other hand, the defendant alone testifies that there was a parol arrangement that he should attend to the disposition of the property to make the amount (1) of the investment in this purchase, and (2) the indebtedness for which he was held as surety, and that he expected further compensation or share of any surplus arising, though he claims there was no express agreement to that effect. It is true that this testimony was received at the hearing by way of reply to the rebutting case on the part of the plaintiff, and after the submission of the depositions on that behalf, and should be considered with due allowance

for such state of the proofs, with the witnesses for the plaintiff not present. But I find nothing in these statements by the defendant which is inconsistent with the facts stated on the other side; and it is clear that mere inferences, as stated by the witnesses for the plaintiff, that they acted for the benefit of the defendant throughout, cannot have effect beyond the facts related by them.

"I am satisfied, therefore, and so find from the undisputed testimony, that the bank, through its representatives, owned the securities and property, so far as the same is in controversy, up to the making of the contract of January 20, 1892, with no definite promise to or with the defendant for their purchase or acquisition by the latter, and the arrangement of that date was made and intended as an adjustment of the relations and interests of the parties, respectively, and that thereupon the purchase of the entire venture, as it then stood in the hands of the bank, was assumed by the defendant, in addition to his obligation as surety, all consummated in that contract, subject only to the conditions therein stated. The pre-existing arrangements and relations between the parties are admissible for the purpose of understanding the attitude in which they dealt, and to explain provisions not otherwise clear, but not to vary any of the terms.

"The contract entered into January 20, 1892, wherein Barth, the bank, and Hanna are first parties, and Watkins is the second party, recites the indebtedness to the first parties of Martin and Watkins, amounting to $21,000. only partially secured by subordinate mortgages; the purchase by the first parties of the prior mortgages and collaterals held by Thurlow, Hutton & Williams against Martin for $17,500, of which part is advanced by Watkins, so that there is due to the first party the sum of $35,437.22 in the aggregate; and the foreclosure and sale of certain of the collaterals and mortgaged premises so purchased, which were 'bought in by the first party,'—and then provides that the second party shall execute notes for $31,000, and pay in cash $4,437.22, and for the conveyance thereupon by the first party to him of the property described. The second party is to make a trust deed to secure payment of his notes. Upon payment of the notes, all the collaterals described, including the notes of Martin, are to be transferred to the second party 'without recourse,' and the first mortgage upon the lands in question and notes therewith are enumerated to be thus transferred. It concludes as follows: 'All the above subject to all suits by said Martin against said property, or the payment of any of said notes; the proceeds, if any, to go to the credit of said Watkins.' On February 12, 1892, to carry out this contract, deeds of conveyance of the real estate on the part of the first parties, and the trust deed on the part of the second party, were executed, and both deposited in escrow with Mr. Heisler, an attorney, to be held by him 'until such time as the litigation over the property in said deeds mentioned shall be determined,' or the parties should otherwise direct. But the notes for $31,000 were delivered to the first parties 'as of full force,' and the cash provided for was paid over by the second party. In a letter from Mr. Hanna to the defendant, which is practically simultaneous with the contract, and refers to its transmission, it is remarked, 'We, of course, will defend the suits progressing.'

"This contract, on its face, is manifestly one of bargain and sale of the property and securities enumerated, and I am of opinion that no other interpretation of the final arrangement is admissible, in the light of all the testimony offered of pre-existing facts; that all were to be transferred and accepted in the status and subject to all conditions of rights and title as then existing, of which the defendant was at least equally advised, with no covenants of title otherwise, express or implied. So construed, the vendor was bound to preserve existing rights to the extent of its means and power, and, when the conditions were fulfilled in conformity with the contract, was bound to perform with such rights unimpaired by any default or conduct on its part, unless excused by a sufficient release, or by acts or requirements on the part of the vendee which create an estoppel. Beyond this obligation, the doctrine of Van Rensselaer v. Kearney, 11 How. 297, 322, 13 L. Ed. 703, and other like cases cited on behalf of the defendant, is not deemed applicable; nor is the vendor in the position of a mere holder of collaterals, or of a stakeholder, as counsel for the plaintiff contends, and the rule of ordinary care and dili-

gence which obtains in such cases is not the test of liability for nonperformance.

"With the contract relation thus held, the final question remains, which party in interest must be held responsible for and must bear the loss incurred through the subsequent proceedings in the name of the vendor for a foreclosure sale under the prior mortgage? This singular transaction resulted not only in the destruction of the vendor's previous title in fee to the valuable real estate involved in such sale, and included in the executory contract to the defendant, but in the loss as well, through unfortunate circumstances, of the sum secured by the mortgage,—$6,000 and over. The foreclosure sale occurred in April, 1892, under a proceeding by advertisement instituted by direction of Barth, one of the vendors and nominal assignee of the mortgage, and conducted by J. P. Heisler as attorney for the bank and its representatives. At the sale, however, the sheriff, who was appointed trustee for the purpose, acted in disobedience of the express directions of Mr. Heisler that he should not open or proceed with the sale under the notice, and later refused to recognize the bids made on behalf of the mortgagee, unless paid in cash, and finally deeded the property to a third party, whose bid was asserted to be the next best. Mr. Heisler had exclusive charge on the part of the bank, although the defendant and a local attorney were present and were fully informed on the day of the sale of his action throughout, namely, of his protests against and procedure with the sale, of his making bids over those offered, and other efforts to prevent adverse sale (not material for the present controversy), and of his eventual refusal to accept from the sheriff the amount tendered to cover the foreclosed mortgage, because he intended to repudiate the sale, and not to recognize it as valid for any purpose. Subsequently the bank instituted a suit to set aside the sale and conveyance, of which it is sufficient to remark that the defendant concurred in such action, employed counsel to aid in its prosecution, with the final result of a decision by the supreme court of the state upholding the sale; thus defeating the title which had become vested in the bank under the previous foreclosures, and depriving the defendant of a portion of the property included in his contract, which exceeded in value the unpaid balance of his notes. Furthermore, the mortgage security involved in that sale was lost through the merger; and the proceeds of the sale, of which tender had been refused, being left in the hands of the sheriff pending the litigation, were likewise lost through the subsequent insolvency and death of the sheriff, with no liability existing upon his official bond for a default of such nature. It should be observed, in passing, that the suits by Martin against the vendors, mentioned in the contract and in the terms of the escrow, were dismissed upon a trial, and were out of the way of performance long before the conclusion of the litigation over the sale in question, but were pending at the date of such sale.

"The testimony discloses no substantial reason for the proceeding to foreclose the first mortgage, which gave rise to the serious complication of the title and eventual loss. So far as appears, no benefit could be derived from it, even if carried out unopposed. But for the purposes of this case the only inquiry is, who was the real mover and actor in the proceeding from which the loss ensued? No question is presented of negligence by either party in the subsequent contest. Each was represented by able counsel, working in harmony, and confident of saving the property from the ill-advised foreclosure sale. Whichever of the contracting parties originated and carried on the unfortunate foreclosure proceedings must bear the resultant loss, represented, so far as concerns this case, by the unpaid balance of the purchase-money note in suit. The question is one of fact, and its solution is saved from difficulty by reason of the absence of direct testimony in point on the part of the plaintiff, thus presenting no substantial conflict in the evidence. The mere fact that the foreclosure was instituted in the name of the vendor party is not the test, for it could not have proceeded otherwise; but the fact that Mr. Heisler, as attorney for the bank, acted solely upon the instructions from that source, without understanding that he was to act under directions of the defendant, as his testimony clearly shows, at least casts the burden of proof upon the plaintiff, if it does not so rest on the prima facie case of the defendant.

"An examination of the testimony of Mr. Barth and Mr. Hanna furnishes no support for the assertion that the defendant directed this move. No written or verbal communication on the part of the defendant to so proceed is specified, nor is any explanation given by either for it, aside from the mere general statements of the inferences of these interested witnesses,—that it was 'for his benefit,' and in some instances stating it in the same general way as 'at his request,' but with no specification of even᷈ the substance of his language. In the connection stated, the answers are not probative, and are clearly insufficient to charge the defendant with the responsibility, in the face of his direct testimony that he neither requested nor suggested such course, and that it was entirely the plan of Mr. Barth, as a countermove for the Martin suits, mentioned to the defendant in a general way, only, and not as a foreclosure proceeding. The fact of the defendant's presence at the foreclosure sale, and of Mr. Heisler's conferences with him and with the local attorney, and the further fact of his taking part in the suits to set aside the sale, by the employment of counsel, and otherwise manifesting his interest, cannot serve to charge the responsibility against him. Nor was the duty cast upon the defendant to decide, after the fact of sale, whether or not the suit should be abandoned, and the proceeds accepted in lieu of the real estate,—certainly not upon the mere suggestion to that effect, stated by the witness Freeman in his testimony. I am of opinion, therefore, that the defendant is entitled to findings in his favor, and they may be prepared accordingly."

A voluminous bill of exceptions was filed, preserving many exceptions to supposed errors of the court in the admission and rejection of evidence, which need not be specifically stated, and are sufficiently referred to in the opinion of the court.

T. J. O'Donnell and Edward W. Frost, for plaintiff in error.
George H. Noyes, for defendant in error.

Before JENKINS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

JENKINS, Circuit Judge (after stating the facts as above). The special finding of the statute should speak the ultimate facts on which the law must determine the rights of the parties, and should not contain a statement of the evidence from which those facts are determined. It is immaterial whether the finding rests on oral testimony or upon written evidence, or in part upon one and in part upon the other. The finding of fact is conclusive upon the appellate court, which may not search the evidence to ascertain if the finding be warranted. We may only inquire whether error intervened in the admission or exclusion of testimony, which should work a reversal of the judgment, and whether the facts found support the judgment rendered. The courts have often spoken to this subject, and the question is no longer an open one. Wilson v. Trust Co., 183 U. S. 121, 22 Sup. Ct. 55, 46 L. Ed. 113; Distilling & Cattle Co. v. Gottschalk Co., 13 C. C. A. 618, 66 Fed. 609; Insurance Co. v. International Trust Co., 17 C. C. A. 616, 71 Fed. 88; Minchen v. Hart, 18 C. C. A. 570, 72 Fed. 294; Jenks' Adm'r v. Stapp, 9 U. S. App. 34, 3 C. C. A. 244, 52 Fed. 641; Corliss v. Pulaski Co. (C. C. A.) 116 Fed. 289.

We pass the first exception without comment, because the record fails to disclose that the defendant in error presented any findings, or requested the court to adopt them, or that there was any refusal upon the part of the court with respect thereto. We say this without implying that the practice suggested is permissible, or that error may be assigned upon refusal of the court to find as requested.

The second exception is to that portion of the third finding of fact which declares that the note was obtained by the plaintiff in error subject to any defense affecting the consideration, and that the plaintiff in error was not a bona fide holder for value, without notice. The objection urged is that this finding is a conclusion of law, and is not supported by the evidence. We are not warranted in looking into the evidence to ascertain if the finding be supported by it. The finding is not that of a conclusion of law. It is a finding of fact, dependent upon the circumstances under which the note was transferred.

The third exception is to that part of the fifth finding of fact to the effect that the court found nothing in the conduct of the defendant touching the foreclosure of the first mortgage by Barth and the bank, and the ensuing litigation with Coler, to charge him with responsibility for the loss thereby incurred. That is also a conclusion of fact, rather than of law,—a negative statement which finds as a fact that the defendant in error did not request or sanction the litigation in question. We may not review the evidence to ascertain whether that finding be warranted. It may, perhaps, be said of the findings that they embody evidence and inferences of fact in addition to the ultimate facts upon which judgment must proceed; but that gives the appellate court no right of review.

The fourth exception goes to the conclusion of law that the defendant below was entitled to judgment of dismissal of the complaint, and this proceeds upon the theory that the facts found do not support the judgment. The issue presented, aside from the question whether the plaintiff in error held the note subject to equities, is whether the consideration of the note had failed. The court, by its fourth finding, stated the facts found with respect to the execution of the note and its consideration. The court has not found as an ultimate fact that the consideration of the note was the agreement to convey the title to the land, but it does find that such was the purport of the agreement under which the note was executed. The finding seems to be that of the court's conclusion of the legal effect of the agreement of the parties. We have therefore sought to ascertain if the court below correctly held with respect to the legal effect of the agreement of January 20, 1892. The question is one not without difficulty, and has engaged our careful scrutiny. We have reached the conclusion that the court below was correct in its finding. The reasoning of the opinion of the court below, which is incorporated in the statement of facts, seems to us well founded, particularly in view of the fact found by the court that Barth owned the real estate and prior mortgages thereon, without promise or obligation on his part or on the part of the bank to sell or otherwise dispose thereof to the defendant. That being the condition of affairs at the time of the execution of the agreement of January 20, 1892, we think the court below was right in holding that the agreement was that of bargain and sale of the property and the securities mentioned, and that the subsequent failure of title through the conduct of Barth and the bank should not be visited upon the defendant in error.

It is also urged that partial failure of consideration is not a good defense at law, the amount being unliquidated. This is the English

rule, formerly followed in the United States. Wentworth v. Goodwin, 21 Me. 150; Morrison v. Jewell, 34 Me. 146; Hogden v. Golder, 75 Me. 293; Drew v. Towle, 27 N. H. 412, 59 Am. Dec. 380; Riddle v. Gage, 37 N. H. 519, 75 Am. Dec. 151; Richardson v. Sanborn, 33 Vt. 75; Pulsifer v. Hotchkiss, 12 Conn. 234; Allen v. Bank, 20 N. J. Law, 620. But the rule is now otherwise, and the cases referred to in Connecticut and New Jersey have been in express terms overruled by the courts of those states. Avery v. Brown, 31 Conn. 398; Bouker v. Randles, 31 N. J. Law, 335; Wyckoff v. Runyon, 33 N. J. Law, 107.

We have scrutinized the many assignments of error relating to the admission and rejection of evidence at the trial. Many of them are merely formal; some going to the order of proof, some to the striking out of testimony which was mere conclusion of witnesses. We find none of them of sufficient moment to consider at length, and none of them availing to a reversal of the judgment. If any of the rulings may be considered as technical and erroneous, it is clear that the errors charged, if such there were, could not have prejudiced and did not prejudice, and ought not to work a reversal. Lancaster v. Collins, 115 U. S. 222, 6 Sup. Ct. 33, 29 L. Ed. 373; Holmes v. Goldsmith, 147 U. S. 150, 13 Sup. Ct. 288, 37 L. Ed. 118; Miller v. Railway Co., 5 C. C. A. 134, 55 Fed. 366.

The judgment is affirmed.