## SCANDINAVIAN-AMERICAN BANK OF FARGO, N. D., v. UNITED STATES NAT. BANK OF PORTLAND, OR.

(Circuit Court of Appeals, Eighth Circuit. April 5, 1921.)

No. 5656.

1. **Election of remedies** ☞1—**Money received** ☞12—**Acts before knowledge money had been received do not waive or bar recovery.**

A right of action for the recovery of money received to plaintiff's use cannot be defeated by dealings between plaintiff and defendant, which the defendant claimed operated as rescission, waiver, ratification, estoppel, and election of remedies, where such dealings all occurred before plaintiff had knowledge that the defendant had collected the money in controversy.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. **Appeal and error** ☞846(1)—**On review of trial to court whether findings support judgment, and whether error was committed, held only questions for consideration.**

Where the case was tried to the court, and special findings were made, which it was not claimed were without evidentiary support, the Circuit Court of Appeals can only inquire whether the facts found support the judgment, and whether, during the progress of the trial, there was error prejudicial to the plaintiff in error, to which it saved exceptions.

3. **Banks and banking** ☞175(4)—**Findings held to show collecting bank liable for collection by it.**

Findings by the trial court that a bank, to which a draft with bill of lading attached had been sent by another bank for collection, collected the money and delivered the bill of lading, but thereafter recalled the draft sent in payment of the collection, and concealed from the remitting bank the fact that the collection had been made, *held* to show the collecting bank was liable to the remitting bank for the amount collected, with interest, as money received to the remitting bank's use.

4. **Banks and banking** ☞169—**Bank fraudulently concealing collection is liable for expenses incurred by remitting bank.**

A bank, which collected a draft sent by another bank, but fraudulently concealed from the latter the fact that it had made a collection, is liable for the money expended by the bank sending the draft for collection in the storage and insurance of the goods covered by the bill of lading, which was delivered at the time the bank made the collection.

In Error to the District Court of the United States for the District of North Dakota; Joseph W. Woodrough, Judge.

Action by the United States National Bank of Portland, Or., a corporation, against the Scandinavian-American Bank of Fargo, N. D. Judgment for plaintiff, and defendant brings error. Affirmed.

The United States National Bank of Portland, Oregon, defendant in error, brought an action against the Scandinavian-American Bank of Fargo, plaintiff in error, on a complaint containing two causes of action—the first for $2,450.18 on the common count, as for money had and received for the use and benefit of the Portland bank, and the second for $906.35, for its damages as an action of deceit. There was answer, replication, jury regularly waived, and the court, after hearing the proof on both sides, made these special findings:

"1. That at all times mentioned herein the plaintiff was and now is a corporation organized and existing under and by virtue of the National Bank Act of the United States, and the amendments to each thereof, and engaged in the banking business in the City of Portland, Multnomah County, Oregon, and is a citizen, inhabitant and resident of the State of Oregon.

"2. That the defendant is a copartnership organized and existing under and by virtue of the laws of the state of North Dakota, with its principal place of business in Fargo, North Dakota, and is a citizen, resident and inhabitant of the State of North Dakota.

"3. That the amount in controversy between the parties, exclusive of interest and costs, exceeds the sum of three thousand dollars.

"4. That on or about the 16th day of October, 1916, F. C. Barnes Company, a corporation, made a draft upon one Lars Mikkelson then a resident of Fargo, North Dakota, for $2,450.18, and attached thereto a bill of lading for six hundred cases of canned salmon.

"5. That thereafter, and on or about the said 16th day of October, 1916, F. C. Barnes Company discounted said draft at the Lumbermen's National Bank of Portland, Oregon, and for a valuable consideration indorsed, transferred and assigned said draft and said bill of lading to the said Lumbermen's National Bank of Portland, Oregon, and the said Bank became the owner thereof.

"6. That on said 16th day of October, 1916, the Lumbermen's National Bank transferred from its loan funds to the checking account of F. C. Barnes Company, in payment for said draft and bill of lading, the sum of twenty-four hundred and fifty dollars and eighteen cents ($2,450.18), and credited to the F. C. Barnes Company, in their bank book, the sum of twenty-four hundred and fifty dollars and eighteen cents ($2,450.18) ; that the F. C. Barnes Company checked against said funds, and used them in the ordinary course of business.

"7. That thereafter and on or about the 16th day of October, 1916, the said Lumbermen's National Bank of Portland, Oregon, forwarded the said draft and bill of lading attached, to the defendant herein for collection, with instructions to deliver only upon payment of the draft.

"8. That thereafter, and on or about the 22d day of November, 1916, the said Lars Mikkelson paid to the said Scandinavian-American Bank the sum of $2,450.18, the amount of the aforesaid draft, and thereupon the said Scandinavian-American Bank delivered to the said Lars Mikkelson the aforesaid bill of lading.

"9. That there was no contract or agreement entered into between this plaintiff and the F. C. Barnes Company, that this plaintiff would not be responsible for the failure of the defendant to remit the moneys so collected, as above found.

"10. That upon the payment to this defendant by the said Lars Mikkelson of the sum of $2,450.18, as above found, the defendant, on November 22, 1916, prepared and placed in the United States mail a draft in said amount in favor of the Lumbermen's National Bank, and addressed to them at Portland, Oregon; that later, through the effect and at the request of this defendant, said draft was intercepted at Portland, Oregon, and returned to this defendant.

"11. That prior to paying to the defendant here the amount of the draft drawn on him by the F. C. Barnes Company, Lars Mikkelson made request of the Railway Company for permission to make inspection of the fish, and was given certain cans of the fish, as directed by him for that purpose, and the defendant received payment of the draft without any understanding as to further inspection.

"12. That the defendant Bank never at any time advised either this plaintiff or the F. C. Barnes Company, nor did either of them have any knowledge until after January 1, 1919, that the draft in question had in fact been paid by Mikkelson, and the bill of lading delivered to him; that on the contrary the defendant, on November 27, 1917, advised this plaintiff that said draft had been refused.

"13. That in January, 1917, the said Lumbermen's National Bank, believing that the said draft had not been paid, and that the said bill of lading had not been taken up, and that the salmon covered by the bill of lading had not been received or paid for by the said Lars Mikkelson, arranged with the said defendant Bank for the storage of the salmon in question, and paid the said defendant Bank. on or about the 8th day of February, 1917, the sum of $342.85. the freight on the said salmon from Portland, Oregon, to Fargo, North Dakota, and the sum of $63.50. the premium upon insurance obtained upon said salmon by the said defendant bank, and the said plaintiff bank became obligated in the sum of $525.55 on account of attorney's fees and cash expenses incurred in an action heretofore brought in this court against the said Scandinavian-American Bank, and the Union Transfer Company, to recover the full value of the said salmon, such action having been instituted, and such expenses having been incurred without any knowledge on the part of the said Lumbermen's National Bank or this plaintiff that the said draft had been paid, and the said bill of lading delivered as above set forth.

"14. That on or about 12th day of January, 1917, the Lumbermen's National Bank charged the account of F. C. Barnes Company the face of the draft in question, $2,450.18, and eighty days' interest, to-wit. $35.93. That said charge was made in the belief that the draft had been dishonored and without any knowledge that it in fact had been paid, and the bill of lading delivered.

"15. That the Barnes Company has, and has had, full knowledge of the bringing of this action, and consented to and approved the bringing of the same.

"16. That on or about the 15th day of September, 1917, the Lumbermen's National Bank of Portland, sold, assigned and transferred unto the plaintiff all of its assets, including all of its rights, claims and demands against the defendant herein, and the plaintiff is now the owner and holder thereof.

"17. I find that the action commenced in this court against this defendant, and the Union Transfer Company, and everything done by plaintiff, or the Barnes Company, subsequent to November 16, 1916, in connection with the fish in question, was done under the mistaken belief that the draft in question had not been paid, or the bill of lading delivered to Mikkelson, and that the same had been dishonored and not taken up; that the belief was created and existed because of the negligence and misconduct on the part of the defendant Bank and its failure to notify the Portland Bank of the fact, as heretofore found in that regard.

"18. I do further find that neither the plaintiff nor the Barnes Company have received from the defendant Bank the sum of $2,450.18 collected from Mikkelson, or any part thereof, nor have they received anything for the fish in question, from anybody, although due demand has been made upon this defendant.

"19. That prior to October 16, 1916, F. C. Barnes Company, of Portland, Oregon, sold to one Lars Mikkelson six hundred cases of canned salmon, by sample, and agreed that said Mikkelson should have the right to examine and inspect said canned salmon at Fargo, North Dakota.

"20. That said shipment of canned salmon was not according to sample and contract, but was inferior and cheaper; and that said Mikkelson, after he had made an examination and inspection of the canned salmon, which revealed that fact to him, sought to reject said salmon, and so wrote Barnes & Company; that said Barnes & Company, by its answering letter, indicated an acquiescence in Mikkelson's refusal to accept the salmon, and consented to Mikkelson's refusal to accept the shipment, and consented to a mutual rescission of the sale, all of which was done without knowledge of the fact of the collection of the draft by the defendant bank.

"21. That the defendant at all times held and retained the warehouse receipt which it obtained from the Union Transfer Company, and the insurance policy, as directed by the plaintiff.

"22. That on or about the 4th day of June, 1918, the plaintiff, the successor of said Lumbermen's National Bank, and as the assignee of said Barnes Company, the owner of said shipment of canned salmon, commenced an action in this court, against the defendant herein, the Scandinavian-American Bank, and said warehouseman, the Union Transfer Company, its alleged cause of action being based upon the ownership of said fish by said Barnes Company, and its right of possession thereof, and alleging that said Union Transfer Company, and the defendant in this action, without authority from said Barnes Company, or said Lumbermen's National Bank, unlawfully converted said fish to their own use and benefit, after the same were stored in said warehouse, and said warehouse receipt had been issued. That at the time of the commencement of this present suit said suit against said Union Transfer Company and the defendant therein was, and still is, pending and undetermined in this court and on the calendar for trial at the present term.

"23. That said Barnes Company did not make a formal demand of plaintiff that it reimburse them for the money charged to their account, as found by the court and did not formally advise the plaintiff bank that Barnes Company expected to hold the plaintiff for the payment of the same, but Barnes Company upon ascertaining that the draft had actually been paid at Fargo, to the Scandinavian-American Bank, went with such information to the officers of the United States National Bank, and was sent by that Bank to its attorneys, who instituted this action. The fair inference from the conduct of the Barnes Company, and the bank, is that there was a mutual recognition of obligation by the bank towards Barnes & Company.

"24. That on or about January 29, 1917, plaintiff instructed defendant to take a warehouse receipt for said salmon in the name of F. C. Barnes Company, and to insure said salmon, and to reimburse said Mikkelson for the amount of the freight on said shipment which had been paid by him, and to hold said

warehouse receipt and insurance policy for the plaintiff's account, all under the mistaken belief that the draft had not been paid.

### "Conclusions of Law.

"1. That the plaintiff have and recover from the defendant the sum of $2,450.18, with interest at the rate of 6% per annum from November 22, 1916, and the further sum of $406.35, with interest at the rate of 6% per annum from February 8, 1917, together with its costs and disbursements to be taxed by the clerk.

"2. That the plaintiff is not entitled to recover the sum of $525, or any sum, in this action, as attorney's fees, and expenses incurred in the case of United States National Bank v. Scandinavian-American Bank and the Union Transfer Company."

The defendant below requested the court to make twenty-three additional findings of fact and eight conclusions of law therefrom, which were all denied.

A. W. Cupler, of Fargo, N. D. (B. G. Tenneson and Ed. Pierce, both of Fargo, N. D., on the brief), for plaintiff in error.

E. T. Conmy, of Fargo, N. D. (Platt & Platt, of Portland, Or., and Young, Conmy & Young, of Fargo, N. D., on the brief), for defendant in error.

Before HOOK and CARLAND, Circuit Judges, and LEWIS, District Judge.

LEWIS, District Judge, after stating the case as above, delivered the opinion of the Court.

[1] A comparison of the requested findings of fact by plaintiff in error with those made by the court, discloses that the former were, to a great extent, but a repetition of the substance of the latter, except as to matters which we deem immaterial to the issues; and that the requested conclusions of law which were attached to and followed them as claimed deductions, were grounds of asserted nonliability,—rescission, ratification and waiver when the storage arrangement was entered into, waiver and estoppel to claim the $2,450.18 of defendant, election of remedies by bringing the first action, and no damage. But from the facts found, indeed almost wholly admitted in the answer, it is established that the acts and conduct of plaintiff below on which rescission, waiver, ratification, estoppel and election of remedies is sought to be rested, were at a time when plaintiff was being fraudulently misled as to the true situation by the defendant Fargo bank, and which it succeeded in keeping covered up from the knowledge of the Portland bank until after January 1, 1919. Those defenses were therefore precluded.

[2] It is not claimed, nor argued, nor assigned as error, nor was objection made at the trial, that any of the findings made by the court is wholly without evidential support, nor that the court failed to make a material finding indispensable to the determination of liability under the issues. We can, then, go no farther than to inquire whether the facts found support the judgment, and whether during the progress of the trial there was error prejudicial to the plaintiff in error to which it saved exceptions. The E. A. Packer, 140 U. S. 360, 11 Sup. Ct. 794, 35 L. Ed. 453; Dooley v. Pease, 180 U. S. 126, 131, 21 Sup. Ct. 329,

45 L. Ed. 457; Stanley v. Albany County, 121 U. S. 535, 7 Sup. Ct. 1234, 30 L. Ed. 1000; Syracuse Tp. v. Rawlins, 104 Fed. 958, 44 C. C. A. 277; Barnsdall v. Waltemeyer, 142 Fed. 415, 73 C. C. A. 515; Tiernan v. Insurance Co., 214 Fed. 238, 131 C. C. A. 284; Bank v. Watkins, 119 Fed. 545, 554, 56 C. C. A. 111.

[3] As to the first count, on collecting the $2,450.18 from Mikkelson the Fargo bank was at once obliged to remit to the Lumbermen's National Bank or the U. S. National Bank its successor, the two having become one by consolidation and reorganization, as alleged and admitted in the pleadings. That obligation has never been discharged by the Fargo bank, plaintiff in error, by any one acting for it. When it received the draft on Mikkelson for collection and collected it, the law implied a promise on its part to remit the amount collected less its reasonable charges. The parties thence stood in a contractual relation, and the plaintiff below was the proper party to bring and maintain this action. No one else could do so. It is the only party interested in the subject-matter of this action and a recovery of the money collected for it. 15 Encyc. Pl. & Pr. p. 502, note.

[4] As to the second count, from the special findings it appears that while the plaintiff below was laboring under the mistaken belief that Mikkelson had not paid its draft on him, created by the false and fraudulent acts and representations of the Fargo bank, it sent to the Fargo bank $406.35 which it was induced to do by said fraudulent conduct, and it incurred a liability for $525.55 in bringing and prosecuting the first action it brought while it was being so misled; and there is no finding that any of those amounts have been returned or paid to it. It thus appears that it has been damaged in the sum of $931.90 by the fraudulent acts and representations of the Fargo bank, which amount it was entitled to recover on the second count.

Twenty assignments of error are directed to the admission and exclusion of evidence. They have been examined and considered, and we regard none of them as prejudicial to the rights of plaintiff in error.

Affirmed.