STATE NAT. BANK OF FT. WORTH, TEX., v. SMITH.

(Circuit Court of Appeals, Fifth Circuit. May 23, 1899.)

No. 794.

1. TRIAL—FINDINGS OF FACT—REQUISITES.

Where a jury is waived by a stipulation in writing, in a circuit court, in an action at law, the court cannot be required to make special findings of fact, but may make either a special or general finding, and should not make both. Such finding must state the ultimate facts of the case, and not be a recital of evidential facts or circumstances which may tend to prove the ultimate facts, or from which they may be inferred.

2. REVIEW—FINDINGS OF FACT.

As to the weight and effect of the evidence, the finding of a circuit court, where a jury is waived by stipulation in writing, is as conclusive on a writ of error as the verdict of a jury.

In Error to the Circuit Court of the United States for the Northern District of Texas.

This action was brought by John P. Smith, receiver of the City National Bank of Ft. Worth, Tex., to recover of the State National Bank of Ft. Worth and John C. Harrison the sum of $6,000 and 10 per cent. interest per annum thereon from July 10, 1896. The petition alleged, in substance, that the State National Bank of Ft. Worth was, at the date of the failure of the City National Bank, the legal and equitable owner and holder of 60 shares of the capital stock of said bank; that said City National Bank became insolvent on the 4th day of April, 1895, and on said date a national bank examiner, by order of the comptroller of the currency of the United States, took charge of the bank; that defendant in error, John P. Smith, was appointed receiver of said insolvent bank on the 12th day of April, 1895; that on the 10th day of July, 1896, the comptroller of the currency made an assessment on the shareholders of said bank of $100 per share for each and every share of the capital stock held and owned by them respectively at the time of its failure; that said 60 shares of stock were issued to said John C. Harrison, as trustee, in two certificates, of date, respectively, June 28 and November 2, 1894, numbered 86c, for 50 shares, and 96c, for 10 shares; that said stock was so issued to said Harrison for the use, benefit, and advantage of said State National Bank, plaintiff in error, and he took the same in his name, as trustee for said bank; and that all said stock and certificates for same appeared on the books of the City National Bank in the name of John C. Harrison, trustee. The petition contained all proper allegations to entitle plaintiff to a recovery against the State National Bank if the ownership of the stock was as alleged in it at the date of the failure of the other bank. The defendants in the court below, John C. Harrison and the State National Bank, by their answer, denied ownership of the stock mentioned, and alleged substantially that 50 shares of the same were pledged to the bank by one Garner as security for a debt owing by him to it, and that the other 10 shares were pledged to it by A. W. and H. C. Caswell to secure a debt owing by them to the bank; that said stock, as well as the dividends arising therefrom, were pledged to the bank, and that, to protect it and the City National Bank against conflicting claims of other creditors of said pledgors, new certificates of said stock were issued to John C. Harrison, trustee, respectively on June 28, 1894, and November 2, 1894; that said stock, since said dates, has appeared on the books of the City National Bank in the name of John C. Harrison, trustee, and has never at any time appeared in the name of the State National Bank; and that the State National Bank at no time became the owner of any of said shares of stock, and never had any interest in the same, except as pledgee to secure said debts. On the trial, the parties, by agreement in writing, waived a jury, and the cause was submitted to the court without a jury. October 15, 1898, a judgment was rendered for plaintiff against the State National Bank of Ft. Worth for the sum of $6,815 and costs of suit, and in

favor of defendant John C. Harrison that plaintiff take nothing as to him, and that he go hence without day, and recover his costs. After the rendition of the judgment, the defendant below moved the court to find a special verdict as to the facts proved on the trial of said cause which are material to the issue raised by the pleadings, and to find a certain conclusion of law in favor of the defendant. This motion appears to have been granted so far as it sought to have a special verdict on the facts proven on the trial of said cause prepared and filed, and also so far as it sought to have the court find its conclusions of law. Thereafter there is in the record, of date October—, 1898, the following, entitled "Special Findings of Fact":

"First. It was admitted on the trial of this case: That the City National Bank is a national bank, chartered under the laws of the United States. That the bank became insolvent on the 4th day of April, 1895, closed its doors, and ceased to transact business. It passed into the hands of a bank examiner. on the 5th day of April, 1895, at which time John P. Smith was appointed receiver. That he qualified as such receiver, and is acting in that capacity, under appointment from the comptroller of the currency of the United States. That the comptroller of the currency of the United States on the 10th day of July, 1896, made an assessment of 100 cents on the dollar of the entire capital stock of the City National Bank of $300,000. That demand has been made by the plaintiff receiver in this case upon the defendant for payment of $100 per share on the stock in litigation, amounting to $6,000. That said demand was made on the 10th day of July, 1896, and that payment has been refused.

"Second. The two certificates of the capital stock of the City National Bank sued on in this case are (1) No. 96, Series C, for ten shares issued to John C. Harrison, trustee, on the 2d day of November, 1894, signed by John C. Mc-Carthy, president, and Max Elser, cashier. On the reverse side of this certificate is indorsed, 'For value received, assigned and transferred to Warren Coleman.' This transfer bears date April 4, 1895, and is signed by John C. Harrison, trustee. Both of said certificates of stock were left with John C. McCarthy, president of the City National Bank of Ft. Worth, on the 4th day of April, 1895, in an envelope, on which was indorsed the following: 'The property of John C. Harrison, trustee. Left at 5:30 o'clock p. m., April 4, 1895, for transfer.' It was admitted on the trial of the case that the sale to Warren Coleman was a sham sale, and was in no way relied upon by the defendant, and that Coleman was a negro porter of the State National Bank, and insolvent, at the time of the sale; that he paid to John C. Harrison, cashier of the State National Bank, $10 for the said stock, which said $10 was returned by the said John C. Harrison, cashier of the State National Bank, on the morning of the 5th of April, 1895.

"Third. On or about the —— day of August, 1893, the State National Bank loaned to Dan Garner $5,000, taking as security therefor his note for that sum, and also, as collateral security, 50 shares of the capital stock of the City National Bank of Ft. Worth.

"Fourth. On or about the——day of November, 1893, the State National Bank loaned to Caswell Bros. the sum of $1,300, and took the note of said firm for that amount, and also, as collateral security, 10 shares of the capital stock of the City National Bank of Ft. Worth, Texas.

"Fifth. Both of said notes gave full power and authority to the State National Bank to sell at public or private sale, at the option of said bank or its assigns, with the right to become the purchaser at such public or private sale of the collateral attached thereto, which is 60 shares of the capital stock of the City National Bank of Ft. Worth, heretofore described, on the nonpayment of said notes, without advertisement or notice, and, after deducting the legal costs of said sale and delivery, to apply the residue of such sale or sales to the payment of said notes.

"Sixth. While the evidence as to whether or not there was a sale and purchase of said stock is conflicting, I find as a matter of fact there was a sale of said stock under the authority conferred by said notes. The said State National Bank, on or about the 28th day of June, 1894, sold and became purchaser of the stock of the City National Bank of Ft. Worth, known as the 'Lee and Garner stock,' and on or about the 2d day of November, 1894, sold and became purchaser of the stock known as the 'Caswell stock,' and

thereby the said State National Bank became the owner of the same, and caused new stock to be issued for it on the above dates in the name of John C. Harrison, trustee; and after said dates said stock was credited upon the books of said State National Bank as an asset of said bank, and was so reported on March 5, 1895, in its sworn report to the comptroller of the currency of the United States, required by law to be made to the comptroller of the currency of the United States.

"Seventh. At the close of business of the City National Bank of Ft. Worth on the 4th day of April, 1895, both of said certificates of stock sued on stood on the books of said bank in the name of John C. Harrison, trustee. I find that John C. Harrison, trustee, was trustee for the State National Bank of Ft. Worth, and both of said certificates of stock were then and now owned by the State National Bank of Ft. Worth, Texas.

"Eighth. The defendant introduced in evidence a note dated on or about the ———— day of July, 1894, signed by C. E. Lee and W. A. Garner, which note recited that the 50 shares of stock of the City National Bank of Ft. Worth were placed as collateral to secure this note. On the back of this note of Lee and Garner there was an indorsement of interest paid on same up to October 1, 1894, and there was a credit on said note of $10.23, dated July 14, 1894, and a credit of $164 was entered on the back of said note on the 10th day of September, 1894. The amount of this note was the same as the amount of the Dan Garner note, which was dated the ———— day of August, 1893; and while I do not find that the interest was paid on the Lee and Garner note up to October 1, 1894, I do find that no interest was paid on said note after that date. The State National Bank still has possession of this note.

"Ninth. The defendant offered in evidence a note dated November 22, 1893, signed by Caswell Bros., upon which there is indorsed a credit of $50, dated April 4, 1894, and indorsed on back, 'Interest paid to August 1st, 1894;' and while I do not find that interest was paid on this note to August 1, 1894, I do find that no interest was paid on said note after that date. The State National Bank still has possession of this note.

"Tenth. The 50 shares of stock deposited as collateral security for the Dan Garner note stood on the books of the City National Bank in the name of Lee and Garner until the 28th day of June, 1894, when new stock was issued for same to John C. Harrison as trustee, and the same stood on the books of the bank in his name as trustee up to the date of the failure of the City National Bank.

"Eleventh. On the 28th day of June, 1894, John C. Harrison, cashier of the State National Bank, and being the same party in whose name as trustee said certificates of stock stood, made a written statement to the City National Bank of Ft. Worth, Texas (said written statement being made on the letter head of the State National Bank), to the effect that the State National Bank had become the purchaser and owner of the said 50 shares of stock deposited as collateral security by Dan Garner, and said written statement was attached, and still remains attached, to the stub of the stock book of the City National Bank, and is as follows:

" 'Fort Worth, Texas, June 28, 1894.

" 'Max Elser, Esq., Cashier, City National Bank, Fort Worth, Texas—Dear Sir: This is to certify that we have sold, and become purchaser thereof (ourselves), 50 shares of the capital stock of the City National Bank of Fort Worth, Texas, being certificates Nos. 17, 18, 246, and 247, for 5, 5, 10, and 30 shares in the name of Dan Garner and L. R. Garner.

" 'Respectfully,                         [Signed]    John C. Harrison, Cashier.

" 'P. S.   Said stock held by us as collateral to loan originally made on or about September 1st, 1893.'

"Twelfth. The ten shares of stock deposited by Caswell Bros. stood on the books of the City National Bank at the time of the failure of said bank in the name of John C. Harrison, trustee, and John C. Harrison was then and there trustee for the State National Bank, and said stock then belonged, and now belongs, to the State National Bank.

"Thirteenth. On and after June 28, 1894, John C. Harrison, cashier of the State National Bank, stated to the officers of the City National Bank that it (the State National Bank) was the owner of the stock in litigation in this

cause, amounting to $6,000, and same was treated by the officers of the City National Bank as the property of the State National Bank from said 28th day of June, 1894, to the time of the failure of the said City National Bank.

"Fourteenth. The State National Bank, on a book called the 'Blotter,' of said bank (said book covering a period from June 23, 1894, to June 17, 1896), on pages 660 and 661, charged the Lee and Garner note for $4,967.42 and the Caswell Bros.' note for $1,300 to profit and loss, and on page 661 there is an entry showing the State National to have acquired 50 shares of stock of the City National Bank for $5,000, and ten shares of the stock of the City National Bank for $1,000; making a total of $6,000. On the general ledger of the State National Bank, under the head of 'Securities, Mortgages, Claims,' etc., there is an entry dated December 31, 1894, referring to the aforesaid entry on pages 660 and 661 of said 'blotter,' relative to the $6,000 of stock acquired as aforesaid, and on the books of the bank before mentioned the said stock of the said City National Bank, amounting to $6,000, stands as the property of the said State National Bank, and as an asset of the bank.

"Fifteenth. On April 5, 1895, securities, stocks, bonds, mortgages, etc., accounts on the books of the State National Bank is credited with 60 shares sold to Warren Coleman for $6,000, and a corresponding entry on page 261 of said book, on April 5, 1895, profit and loss is debited with 'loss of City National Bank stock, $6,000.'

"Sixteenth. On the 31st of December, 1894, the directors of the State National Bank, at a regular meeting of the board, adopted the following resolutions, to wit: 'It was also agreed that there should be charged to other stocks, bonds, and mortgages, 60 shares of the City National Bank of Ft. Worth stock, having to take same in payment of Garner and Lee note for $5,000, and A. W. Caswell's note for $1,300, to hold same in trust to secure said notes.' I find that the words 'to hold same in trust to secure said notes' are interlined in said minutes of said directors' meeting containing said resolutions. I find that said minutes are in the handwriting of said John C. Harrison, cashier, and that said interlineation is in the same handwriting.

"Edward R. Meek, U. S. District Judge."

And then follow conclusions of law, to wit:

"I find that the plaintiff, John P. Smith, receiver of the City National Bank, should recover of the State National Bank the amount of the assessment on said stock, together with six per cent. interest from the 10th day of July, 1896, and all costs of suit. I further find that the amount of the judgment plaintiff should recover of the defendant, the State National Bank, including interest, is the sum of $6,815, and that this judgment bear interest at the rate of six per cent. per annum from this date, together with all costs in this behalf. I further find that the plaintiff take nothing against the defendant John C. Harrison, and that said defendant go hence without day, and recover his costs in this behalf expended.        Edward R. Meek, U. S. District Judge."

There are six assignments of error relating to the alleged findings of the court, and generally contending that they are inconsistent, conflicting, and do not support the judgment rendered.

W. P. McLean and D. W. Humphreys, for plaintiff in error.

T. F. West, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

Having stated the facts, the opinion of the court was delivered by PARDEE, Circuit Judge.

This is not a case where, a jury having been waived, the court proceeded to make a special finding of facts, and then rendered judgment thereon, but rather a case where the court proceeded to make a general finding, and rendered judgment thereon, and thereafter—possibly during the term—allowed to be prepared, found, and filed special findings as to the facts proven on the trial of the case. We have had occasion to hold that in an action at law, where a jury

is waived by stipulation in writing, the court cannot be required to make a special finding of facts, but may make a general finding. Key West v. Baer, 30 U. S. App. 140, 13 C. C. A. 572, and 66 Fed. 440. It is irregular, in such cases, for the court to make both a general and a special finding of facts, unless the same be done at one time, and in such a way that the conclusion necessarily follows that the general finding is based upon the special facts found. In fact, the supreme court, in British Queen Min. Co. v. Baker Silver-Min. Co., 139 U. S. 222, 11 Sup. Ct. 523, held that the finding must be either general or special, and cannot be both. The special findings prepared and filed are made up of recitals of admissions, recitals of evidence, findings of preliminary evidential facts, and findings of ultimate facts.

In Raimond v. Terrebonne Parish, 132 U. S. 192, 10 Sup. Ct. 57, it is held, citing authorities, that:

"By the settled construction of the acts of congress defining the appellate jurisdiction of this court, either a statement of facts by the parties or a finding of facts by the circuit court is strictly analogous to a special verdict, and must state the ultimate facts of the case, presenting questions of law only, and not be a recital of evidence, or of circumstances which may tend to prove the ultimate facts, or from which they may be inferred. Burr v. Navigation Co., 1 Wall. 99; Norris v. Jackson, 9 Wall. 125; Martinton v. Fairbanks, 112 U. S. 670, 5 Sup. Ct. 321."

In Moller v. U. S., 13 U. S. App. 472, 480, 6 C. C. A. 459, 464, and 57 Fed. 490, 495, this court, in dealing with an alleged finding of facts, took occasion to advise the bar as follows:

"The bill of exceptions, which purports to be a finding of facts, is nothing more than a recapitulation of conflicting evidence, where, as recited therein, some witnesses testified one way and others testified directly to the contrary. It is neither a statement of facts by the parties nor a finding of facts by the court. Raimond v. Terrebonne Parish, 132 U. S. 192, 10 Sup. Ct. 57; Glenn v. Fant, 134 U. S. 398, 10 Sup. Ct. 583; Davenport v. Paris, 136 U. S. 580, 10 Sup. Ct. 1064; British Queen Min. Co. v. Baker Silver-Min. Co., 139 U. S. 222, 11 Sup. Ct. 523. We suggest to the members of the bar in this circuit that an examination of these last-cited cases will be advantageous if hereafter, in common-law cases, they should desire to bring facts to this court for review."

An examination of the special findings shows that the evidence and the preliminary facts found are somewhat conflicting, but the weight thereof preponderates in favor of the correctness of the ultimate facts found. On writ of error we are not permitted to examine the evidence to determine its force and effect otherwise than, if such question be properly made, to inquire if there is any evidence at all to support the findings of fact. As to the weight and effect of the evidence, the finding of the trial court is as conclusive as the verdict of a jury. Lehnen v. Dickson, 148 U. S. 71, 73, 13 Sup. Ct. 481. And if we were called upon to examine the weight of the evidence, we should be embarrassed in this case, because there is no certificate that the evidence recited in the findings of fact was all the evidence submitted on the trial. If we assume the proceedings below to have been regular, and therefore that the special finding of facts is properly before us, then is presented the question whether the facts as found are sufficient to sustain the judgment. On this proposition we have no doubt. The court specifically found that the stock of the City National Bank of Ft. Worth, in question, was sold, and

94 F.--39

purchased about June 28 and November 2, 1894, by the State National Bank of Ft. Worth, under authority conferred by the notes which said bank held against Dan Garner and Caswell Bros.; that the purchase was duly notified to the City National Bank, and new stock certificates were issued therefor, and, under the direction of said State National Bank, placed in the name of John C. Harrison (its cashier) as trustee; that the State National Bank not only held and controlled the certificates, but placed the stock upon its books as an asset, and on March 5, 1895, reported the same to the comptroller of the currency; that John C. Harrison, trustee, in whose name the stock was placed, was a trustee for the State National Bank of Ft. Worth; and that at the date of the failure of the City National Bank the State National Bank of Ft. Worth was the owner of the stock. There is recited in the special findings some evidence, as well as evidential facts, tending to show that the State National Bank was, notwithstanding the sale and purchase, holding the stock as collateral, and not as owner; but, as said above, this court cannot consider nor give effect to this evidence. It was doubtless given full weight, in connection with the other evidence, by the judge who tried the case. Affirmed.