**HENRY H. CROSS CO. v. TEXHOMA OIL & REFINING CO. et al.***

Circuit Court of Appeals, Eighth Circuit.
April 9, 1929.

No. 8433.

A. A. Davidson, of Independence, Kan. (Louis L. Dent, of Chicago, Ill., Preston C. West, of Tulsa, Okl., Dent, Dobyns & Freeman, of Chicago, Ill., and West, Gibson, Sherman, Davidson & Hull, of Tulsa, Okl., on the brief), for appellant.

T. R. Boone, of Wichita Falls, Tex. (John B. King, of Chicago, Ill., and G. R. Pate and Bullington, Boone, Humphrey & King, all of Wichita Falls, Tex., on the brief), for appellee Texhoma Oil & Refining Co.

Tarlton Morrow, of Wichita Falls, Tex. (Weeks, Morrow, Francis & Hankerson, of Wichita Falls, Tex., on the brief), for appellee ·Gray.

Before LEWIS and VAN VALKENBURGH, Circuit Judges, and SYMES, District Judge.

VAN VALKENBURGH, Circuit Judge. December 22, 1924, the Henry H. Cross Company, appellant herein, entered into a contract with the Griswold Oil Corporation of Electra, Tex., which contract was in the words and figures following:

*Rehearing denied June 13, 1929.

"Contract of Sale.

"Chicago, Illinois, Dec. 22d, 1924.

"1. Seller: Griswold Oil Corporation, Electra, Texas.

"2. Buyer: Henry H. Cross Company.

"3. Destination:

"4. Goods sold: 5,500,000 gallons strictly 24–26 gravity straight reduced fuel oil, sulphur not over ½ of 1%, cold test.

"5 Quantity: 5,500,000 gallons.

"6. Quality:

"7. Price: 70% 38 crude as posted by Prairie Oil & Gas Company for North Texas, date of shipment—seller's cars—f. o. b. Electra, Texas. Oil purchased to move over Orient Railroad.

"8. Point of delivery: Seller's cars—Electra, Texas.

"9. With allowance:

"10. Period of delivery: For shipment over period of 12 months beginning Jan. 1st, 1925, at rate of approximately 500,000 gallons per month, 10% more or less.

"Delivery apportioned:

"12. Terms of payment: 1% 10 days or sight draft, preferably 10 days from date of shipment.

"13. Special conditions:

"The above is a correct statement of the terms and conditions of a sale negotiated this date between the parties hereto, which are hereby agreed to, subject to the terms and conditions printed on the back hereof, which are hereby made a part of this contract.

"This contract shall be effective only when executed by the properly authorized representatives of the parties hereto which execution shall be completed not later than Jany. 1, 1926.

"Accepted this 30 day of Dec., 1924.

"Griswold Oil Corp.,

"By E. F. Griswold.

"Henry H. Cross Company, Buyer,

"By H. H. Cross, Pres."

The conditions printed on the back, to which reference is made, so far as pertinent here, are the following:

"In the event the buyer does not furnish the seller shipping instructions on or before the last day of any installment period of this contract for the amount of goods contracted to be purchased during such installment period, the seller shall have the right at his option to cancel contract and charge the buyer with any damage he has sustained on account of such failure of the buyer to give such instruction, without any obligation on part of seller to tender all or any part of such unshipped portion.

"This contract shall be construed as a divisible contract and time is of the essence thereof.

"This agreement shall inure to the benefit of and be binding on heirs, executors, administrators, successors, and assigns, of the respective parties hereto."

On the same date the Cross Company entered into a contract identical in terms with the Wichita Refining Company of Wichita Falls, Tex. The Texhoma Oil & Refining Company of Wichita Falls, Tex., as assignee of these contracts, brings suit, in the District Court for the Western District of Oklahoma, against appellant to recover damages for breaches thereof. The Griswold Oil Corporation is now a bankrupt; its trustee in bankruptcy, D. G. Gray, Esq., has intervened in said cause to recover damages for alleged breach of the Griswold Oil Corporation contract occurring prior to the bankruptcy.

Mr. Cross, president of the appellant company, testifies that, prior to the execution of the contract, in conversation with Mr. Griswold, president of the Griswold Oil Corporation and the Wichita Company, he wished it to be understood that the shipments under the contracts would be evenly distributed over the month. There appears in the record a telegram from the Griswold Corporation to Cross, of date December 30, 1924, stating among other things, that "all shipments under contract will be spread evenly over the months." There is a dispute in the testimony as to the significance of the language used. The claim of appellant is that shipments were to be made at the rate of an average of 1⅔ cars per day. Upon this point the written contract, in which all prior negotiations between the parties were merged, is silent. The court finds that no change was made in the terms of the contracts, but that the parties attempted to spread the shipments evenly over the months. The contracts took effect January 1, 1925. During the month of January the Griswold Oil Corporation shipped 43 cars, with a gallonage of 381,942 gallons—appreciably less than the 500,000 gallons, 10 per cent. more or less, required by the contract. On January 9th appellant complained that oil had not been shipped as fast as instructions therefor had been given. The Griswold Company stated in reply that they would ship the cars requested and would protect the defendant on the price accordingly. This was accomplished by February 2, 1925, and the oil thus billed was accepted by appellant and at the

February 2d price, which was lower than that prevailing in January. This voluntary reduction on the part of the Griswold Company was an evidence of its good faith and of its purpose to perform the contract substantially in accordance with its terms.

On February 10, 1925, appellant sent to the Griswold Oil Corporation the following telegram:

"Bills of lading and shipping papers disclose the fact that cars C Y C X two naught five four and I M R X five two six and I M R X five two one and C Y C X two naught four six were shipped from Ardmore which is a violation of your contract with us and labratory test of these cars shows that the oil contains more than one percent sulphur and has a gravity of twenty decimal eight which are further violations of this contract Stop We have refused payment on draft covering these cars and are holding them subject to your order Stop These violations of the contract have caused us substantial damage and on account of them we cannot accept further shipments."

On February 12th the Cross Company sent to the Griswold Company this further telegram:

"Confirming our telegram of tenth instant we refuse to take any further shipments under this contract Stop Your conduct in this contract has convinced us that we cannot have any assurance of the future faithful performance of it by you Stop You have persistently violated shipping instructions from the beginning and lately attempted to palm off on us the four Ardmore cars which had been rejected by somebody although you knew that you were not complying with contract specifications Stop Taking all these things together we are firmly of the opinion that you do not faithfully mean to carry out your contract and we therefore refuse to take any further shipments Stop Our customer refuses to hold cars any further and are turning them back to Chicago West Pullman and Southern Railroad at South Chicago and we repeat that these cars have been and are at your own order and risk."

The Griswold Company responded, offering to make all amends in the way of damage, claiming that the shipment from Ardmore had been diverted to appellant without its knowledge, and promising, upon investigation, to rectify matters. It also protested against the cancellation of the contract, for the reason that the act complained of was inadvertent and a mere incident; that the contract was divisible, and that no cancellation was warranted upon the ground stated.

The Cross Company, however, peremptorily refused to go on with the contract, and gave no further shipping orders thereunder, although requested so to do. The court finds that at all times thereafter the Griswold Corporation was able and ready to furnish oil under the terms of the contract, if shipping orders had been given, and appellant had been ready to accept it.

In January instructions were given by appellant to the Wichita Refining Company for 62 cars of oil. The Refining Company shipped 47 cars, with a gallonage of 431,194, appreciably less than the amount called for by the instructions and under the terms of the contract. However, no steps were taken by appellant to cancel the contract upon this or any other ground; but, on the contrary, dealings continued between the Wichita Company and the Cross Company until on or about May 22, 1925. During this period the terms of the contract, with respect to the volume of shipments, were neither met nor exacted. It appears, however, that the Wichita Company was at all times able and ready to ship oil in accordance with the terms of the contract; also, it appears that appellant was not prepared to receive the oil in such quantities, although earnestly urged to give the necessary shipping orders. This appears from telegrams passing between the parties, of which the following are specimens:

"March 2, 1925.
"Henry H. Cross Co., 122 O. S. Michigan Ave., Chicago, Ill.

"We must have shipping instructions on fuel oil covered by your contract for the balance due in February also a few instructions for March. Advise us what we may expect.
"Wichita Refining Company."

"Mar 3 P M 3 24
"Wichita Refining Co., Wichita Falls Tex.

"Please bear with us few days and we will send shipping instructions on fuel oil.
"Henry H. Cross Company."

May 22, 1925, both the Griswold Oil Corporation and the Wichita Refining Company assigned their respective contracts to appellee Texhoma Oil & Refining Company, together with the right, claim, and title of the Griswold Oil Corporation to all and every kind and character of damage growing out of and resulting from appellant failing and refusing to comply with the Griswold contract prior to the date the same was assigned to the Texhoma Company. The assignee immediately made demand upon appellant for performance of the contracts and for

shipping orders thereunder. Appellant refused to recognize the assignment and the title of the Texhoma Company, and declined to give shipping orders and to have any relations with the Texhoma Company under the contracts assigned.

Upon trial in the District Court a jury was waived in writing and the court found the issues for the plaintiff for all damages accruing on both contracts from the date of the assignments to it, and in favor of the intervener for damages because of breach of the Griswold contract from January 10, 1925, to May 22, 1925, the date of the assignment to the Texhoma Company. Appellant made requests for findings of facts, which were refused. The court, however, made special findings. The appellant also requested several declarations of law, but did not move for judgment. No error can be assigned to the action of the court in refusing the findings of fact requested, because, where a jury is waived by written stipulation, the making of special findings is entirely discretionary with the court. Sections 649, 700, Rev. Stat. U. S.; 28 USCA §§ 773, 875. The finding, whether general or special, has the same effect as the verdict of a jury. Mercantile Mut. Insurance Co. v. Folsom, 18 Wall. 237–249, 21 L. Ed. 827; United States v. A., T. & S. F. Ry. Co. (C. C. A.) 270 F. 1–4; Denver Live Stock Commission Co. v. Lee (C. C. A. 8) 18 F.(2d) 11–16.

In the absence of a request made to the trial court before the close of the trial to find the issues in favor of the requesting party on the ground that the evidence will sustain no other conclusion, we cannot review the sufficiency of the evidence to sustain the finding and judgment. Wear v. Imperial Window Glass Co. (C. C. A. 8) 224 F. 60; Allen, Collector, v. Cartan & Jeffrey Co. (C. C. A. 8) 7 F.(2d) 21; Pennok Oil Co. v. Roxana Petroleum Co. (C. C. A. 8) 289 F. 416; Denver Live Stock Commission Co. v. Lee (C. C. A. 8) 20 F.(2d) 531.

Since the court made special findings, our review may extend to a determination of the sufficiency of the facts found to support the judgment. Fleischmann Const. Co. v. United States, 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624. The questions of law involved are presented by the points relied upon by counsel for appellant in their brief. They are:

"(1) That the several different writings between the parties constituted their contract, or that at least the telegrams between the parties exchanged contemporaneously with the execution of the contract, and be-

fore the buyer had affixed his signature thereto, constituted a binding collateral agreement under which the monthly installments of fuel were to be made evenly over the month.

"(2) That the obligation of the seller to perform the contracts was not made dependent upon the buyer's shipping instructions as a condition of such performance.

"(3) That the purported assignment of the contracts to Texhoma Oil & Refining Company was without legal effect and so as to confer upon it the right to demand performance of their terms.

"(4) That the plaintiff was not entitled to recover damages for the alleged breach of the contracts in evidence for the reason that sellers committed the first substantial breach in the performance of said contract.

"(5) That because of the failure of Griswold Oil Corporation to deliver the minimum monthly quantity of fuel oil for January, 1925, and to ship the same evenly over the month, and to ship the particular commodity contracted for from the designated point of shipment, appellant, the buyer, had the right to rescind the contract, and did so rescind the same, with notice thereof to the seller; that the same was not waived under the facts and circumstances shown of record, and that the seller, in fact, acquiesced in such rescission.

"(6) That the Griswold Oil Corporation, denying the buyer's right to rescind, and denying that the contract was rescinded or abandoned, and insisting upon such contract, was bound to perform, or to tender performance upon its part, and having failed to prove its allegation that it made such offer and tender of performance cannot recover.

"(7) That the measure of damages for breach of the contracts in evidence is the difference between the contract price of the fuel oil and what it would have cost to produce the same ready for delivery to the buyer, and that the court erred in denying appellant's request to so declare the law to be."

These points will be taken up in their order.

1. It is admitted by counsel for appellant that the various writings between the parties, upon which reliance is placed to show breaches on the part of the Griswold and Wichita Companies in failing to distribute the installments of oil evenly over each month, passed prior to signing of the contracts, which were left unchanged. However, appellant's contention, if indulged, cannot affect the issue. The failure of the Griswold Corporation to ship the contract gallonage in

January was fully condoned by acceptance early in February of shipments charged at a lower price than could have been exacted for January shipments. The contract by its terms was divisible, and the breaches complained of might give rise to claim for compensation, or action for damages, but not to right of rescission. The conduct of the Griswold Company manifested no intention of repudiating or abandoning the contract. Illinois Uniform Sales Act, § 45; article 10021 (48) Callaghan's Illinois Law 1913-1916; Howe Grain & Mercantile Co. v. Taylor (Tex. Civ. App.) 147 S. W. 658.

The January default had been remedied to the advantage of appellant in the matter of price. The court found that shipping instructions were given by defendant to both companies on February 2, "after having knowledge of the derelictions of the respective companies on account of the shipments made prior thereto." Immediate action was indispensable to appellant's release from subsequent liability to perform. McDonald et al. v. Kansas City Bolt & Nut Co. (C. C. A. 8) 149 F. 360, 8 L. R. A. (N. S.) 1110. Furthermore, the ground assigned for the attempted cancellation was not the failure of the vendor to ship evenly over the month, but rather the shipment from Ardmore of 4 cars of oil, said to contain more than 1 per cent. of sulphur, which, it was claimed, appellant's customer had refused to accept. A subsequent telegram mentioned violation of shipping instructions by way of aggravation, but the gravamen of the complaint was the shipment of the 4 Ardmore cars. On this point the court found as follows:

"As to the cars diverted and originally shipped from Ardmore, Okl., the evidence shows that same were not rejected by the International Harvester Company, but, on the contrary, met with its specifications as to sulphur contents, were accepted, used, and paid for by said harvester company. No damage resulted from the use thereof and defendant made no effort to prove any damage such as stated in his telegram of February 10, 1925. On February 10, 1925, the market price of fuel oil was lower than the contract price, and the contract price again advanced on February 12, 1925."

With respect to the Wichita Company, no attempt was made by appellant to declare a breach because of violation of contract obligations as to shipments. On the contrary, dealings between the Wichita Company and appellant continued without interruption, and without observance of contract specifications, especially on the part of appellant,

until the assignment to the Texhoma Company. We see no merit in this contention.

2. The contracts in terms provided for shipping instructions, in default of which the sellers had the option to cancel, and charge the buyer with any damage sustained on account of the failure of the buyer to give such instructions, without any obligation on the part of the seller to tender all or any part of the unshipped portion. Examination of the record discloses that not only were such shipping instructions expected by the parties to be given and received, but also that it would have been impracticable for the sellers to perform, without explicit directions as to the desired destinations of the oil. The court finds that both companies were able and willing to perform, if permitted so to do. In the face of positive repudiation by appellant, they were not called upon to make a futile gesture of tender at the close of each installment period.

3. The contracts were assignable by their terms. Both were of the nature commonly made and assigned in the usual course of business of oil companies. Both were made in the name of the corporation assignors. That of the Griswold Corporation was executed by E. F. Griswold, its president; that of the Wichita Company by Griswold and Dawson, its president and vice president. E. F. Griswold, as president, had direct superintendence of the affairs of both corporations, and was evidently intrusted with the management and control of the corporate business of each. The Wichita Company was owned by three persons, Griswold, Dawson, and Parker. No objection to this assignment has proceeded from any one having an interest in the property, whether as stockholder or creditor. It does not appear that there are creditors. The Griswold Corporation is in bankruptcy. The trustee, representing both the estate and its creditors, has ratified and approved the assignment by that company. The contracts were to be performed and the assignments were made in the state of Texas, and are subject to its laws. Of the latter the Supreme Court of Texas says:

"When every one who has an interest in the property, although that interest may, as long as the corporation exists, be indirect, consents that the officer appointed by the law to convey the assets of the corporation, when duly authorized to do so, shall convey, and it is accordingly so conveyed, we are of opinion that the conveyance should be held good." Aransas Pass Harbor Co. v. Manning, 94 Tex. 558, 63 S. W. 627.

Appellant relies upon Arkansas Valley

Smelting Co. v. Belden Mining Co., 127 U. S. 379, 8 S. Ct. 1308, 32 L. Ed. 246. The gist of that decision may be summed up in the following quotation from the opinion:

"At the present day, no doubt, an agreement to pay money, or to deliver goods, may be assigned by the person to whom the money is to be paid or the goods are to be delivered, if there is nothing in the terms of the contract, whether by requiring something to be afterwards done by him, or by some other stipulation, which manifests the intention of the parties that it shall not be assignable. * * * The contract here sued on was one by which the defendant agreed to deliver 10,000 tons of lead ore from its mines to Billing and Eilers at their smelting works. The ore was to be delivered at the rate of 50 tons a day, and it was expressly agreed that it should become the property of Billing and Eilers as soon as delivered. The price was not fixed by the contract, or payable upon the delivery of the ore. But, as often as a hundred tons of ore had been delivered, the ore was to be assayed by the parties or one of them, and, if they could not agree, by an umpire; and it was only after all this had been done, and according to the result of the assay, and the proportions of lead, silver, silica and iron, thereby proved to be in the ore, that the price was to be ascertained and paid. During the time that must elapse between the delivery of the ore, and the ascertainment and payment of the price, the defendant had no security for its payment, except in the character and solvency of Billing and Eilers. The defendant, therefore, could not be compelled to accept the liability of any other person or corporation as a substitute for the liability of those with whom it had contracted."

Here neither personal service nor financial responsibility are involved. The case is readily distinguishable from that just quoted. In re Niagara Radiator Co. (D. C.) 164 F. 102. "As a general rule, all contracts are assignable, unless an assignment is forbidden by statute or by the terms of the contract itself. Contracts involving relations of personal confidence and contracts for personal service form an exception to the rule." Panhandle Lumber Co. v. Mackay, 21 F.(2d) 916 (C. C. A. 9).

As to the choses in action which had accrued the right of assignment is undoubted. 14a C. J. pars. 2267, 2298, pp. 418, 444. Third parties, such as appellant, may not complain of informalities in assignments of contracts, not involving relations of personal confidence, and not for personal service, where no complaint is made by either party

to the assignment or their creditors. The contracts before us are not of the excepted nature. There is no provision that the oil to be sold must be the product of the sellers. The Texhoma Company is found to be ready, able, and willing to perform in accordance with the terms of the contract. This point accordingly is ruled against appellant.

4 and 5. These points are found to be without merit, and are ruled against appellant as a result of the conclusion reached upon point one, supra.

6. This point is disposed of adversely to appellant upon the reasoning employed above in considering point 2.

7. Since the oil was not required to be the product of the sellers, and since the court found that there existed an open market for fuel oil such as was covered by the contract, and that the record showed the situation respecting the market price from time to time during the period covered by the contract, the measure of damages was correctly applied by the court. This result also follows consistently from the conclusion reached under point 3.

Finding no reversible error in the record, the judgment below is affirmed.