## BABBITT BROS. TRADING CO. v. NEW HOME SEWING MACH. CO.
### No. 6781.

Circuit Court of Appeals, Ninth Circuit.
Dec. 12, 1932.

C. B. Wilson, Orinn C. Compton, and James E. Babbitt, all of Flagstaff, Ariz., for appellant.

Francis D. Crable, Howard Cornick, and Cornick & Crable, all of Prescott, Ariz., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

SAWTELLE, Circuit Judge.

This case comes before us on appeal from a judgment rendered in an action at law brought on three trade acceptances, aggregating $9,096.60, drawn by the appellee, plaintiff below, on the defendant-appellant, and accepted by the latter.

A jury was waived by the parties, the written waiver stipulating "that the findings of the court upon the facts, which may be either general or special, shall have the same effect as the verdict of a jury."

The New Home Sewing Machine Company, the appellee, is a corporation duly organized under the laws of Massachusetts, of which it is a citizen, and the Babbitt Brothers Trading Company, the appellant, is organized under the laws of Arizona, and is a citizen of that state.

The three drafts in question were each dated September 18, 1928, and the respective acceptances were each dated October 9, 1928. They specified that, "The obligation of the acceptor hereof arises out of the purchase of goods from the drawer."

On March 18, 1929, Trade Acceptance No. 1 was presented by the appellee to the appellant in accordance with the terms of said acceptance, and demand was made for the payment thereof; said appellant then refused and has ever since refused to pay the same or any part thereof. On June 18, 1929, Trade Acceptance No. 2 was presented, and payment likewise refused, as stated above. On September 18, 1929, Trade Acceptance No. 3 was similarly presented and payment thereof refused.

The foregoing facts are admitted in the pleadings. In its answer and cross-complaint, however, the appellant denied that it had unconditionally promised to pay the sums due on the said trade acceptances, but that its promise to pay was wholly dependent and conditional upon the performance by the appellee of the terms of a certain contract in writing between appellee and appellant, dated August 14, 1928, together with an order made simultaneously therewith, pursuant thereto and as a part thereof, dated August 13, 1928. The appellant further alleged that the appellee has wholly failed to carry out the terms and conditions of said contract and order, and that by reason of said default on the part of the appellee the consideration for the acceptances sued upon has wholly failed. The appellant denies that there is due and owing from it to the appellee any sum whatever.

Further answering the complaint, the appellant alleged that on or about August 13, 1928, the appellee, through its agent and sales manager for Arizona and New Mexico, Nick T. Dockery, solicited the appellant at its principal place of business at Flagstaff, Ariz., for the sale to it of a certain number of sewing machines for resale at and distribution from its several stores and places of business in the northern part of Arizona. The appellant advised the appellee that it was not equipped to put on a campaign for the sale of sewing machines and was not interested in the appellee's proposal unless the appellee would furnish experienced salesmen for the sale of such machines as might be ordered and would guarantee the sale thereof within a reasonable time, according to the appellant's answer and cross-complaint.

In its pleadings, the appellant further alleges that thereafter, on August 14, 1928, the appellee proposed to sell to the appellant a carload of the former's machines for $9,656.-50, less freight to be paid by the appellant and deducted from the first installment of the purchase price, to be paid in three equal installments, six, nine, and twelve months from the date of the arrival of the shipment, upon further terms and conditions, as follows:

1. The appellee was to furnish the appellant with one or more salesmen to sell the machines at retail as long as the appellant might have any of such machines in stock; said salesman or salesmen to be under the supervision of appellant, and were to make collections of all delinquent accounts for the said

machines and repair them free of charge to the appellant.

2. The appellee was to guarantee the sale of all the said machines within twelve months from the date of their arrival, and all machines not sold at the end of the twelve months' period were to be taken off the appellant's hands by the appellee, and cash refund was to be made by the appellee to the appellant for such machines so taken.

3. The appellee was to furnish and ship to the appellant advertising matter sufficient for five stores, including mats for newspaper advertising and window signs and folders for mail.

4. The appellant was to pay the salesmen so furnished 20 per cent. on the net sale of each machine sold, less a deduction of 20 per cent. of such commissions to take care of reverts; such payments to be made Saturday night of each week on sales made and accepted up to and including the Friday night previous. All old machines taken in trade were to belong to the salesmen.

5. All sales made by such salesmen were to be accepted by the appellant's credit department and verified by the appellant's local manager, and no contracts for the sale of such machines were to be made in which payments were to extend beyond eighteen months from the date of sale.

The appellant further alleged that the proposal above set forth was accepted by the appellant in writing on August 14, 1928; that pursuant thereto and as a part of the said contract between the appellee and the appellant, there was executed by the parties an order form of the appellee company for the sewing machines above referred to; that the said contract and the said order form were executed in duplicate simultaneously, and a copy of each was "attached and retained by each of the parties thereto as the completed contract of said parties."

The appellant further alleged that the sewing machines were shipped on or about September 18, 1928, and that on the following day the appellee forwarded to the appellant the trade acceptances, which, after deducting certain items, "deductible under the terms of said contract," were accepted by the appellant and returned to the appellee "as an accommodation" to the appellee.

It was also alleged by the appellant that, upon receipt of the shipment by the appellant, the appellee, at the appellant's request, "and pursuant to said contract," furnished the salesmen agreed upon, which salesmen continued to carry on a sales campaign up to about December 10, 1928, when they discontinued their work; that on December 13, 1928, the appellant notified the appellee of such discontinuance; and that on December 18, 1928, the appellee disavowed and repudiated said contract.

In its cross-complaint, the appellant asks for certain sums representing printing expenses, freight, taxes, storage, and other items.

The appellee's reply to the appellant's answer and the appellee's answer to the appellant's cross-complaint denied that it entered into or ratified the alleged agreement of August 14, 1928; denied that Dockery had authority on behalf of the appellee to make such alleged agreement; declared that the order of August 13, 1928, was accepted by the appellee subsequently to August 13, 1928, and that at the time of such acceptance there was not attached thereto the said purported agreement of August 14, 1928; and alleged further that at the time of accepting the order the appellee had no knowledge of the existence of the purported contract of August 14, 1928, and never at any time received either the original or a duplicate copy of such purported contract.

The appellee also pleaded the fact that the appellant was put upon notice of the limitation of Dockery's power to represent the appellee from the following sentence appearing in the order "directly above the signature of" the appellant's representative: "It is understood that no conditions agreed to by any salesman or agent and not embodied herein will be binding on The New Home Sewing Machine Company, and it is understood and agreed that The New Home Sewing Machine Company shall not be in any way liable under any separate or collateral agreement made between the undersigned and its salesman."

The appellee further alleged that long after the sale and delivery of the said machines and personal property to the appellant by the appellee, and long after the receipt by the appellee from the appellant of the trade acceptances duly accepted by the appellant—namely, on or about January 7, 1929—the appellee for the first time learned of the existence of the purported contract of August 14, 1928, when the appellant, in a letter to the appellee, purported to set out the purported contents of said contract; that upon receipt of the said letter the appellee immediately disclaimed the said contract as its own; and that the order of August 13, 1928, "constituted the only contract for the sale of said machines and personal

property ever existing between" the appellee and the appellant.

As a further reply to and as a separate defense against the appellant's answer and cross-complaint, the appellee denied that Dockery was the appellee's agent for the purpose alleged, namely, to make the alleged contract of August 14, 1928; and that Dockery had any authority whatsoever, other than to solicit and obtain orders for the appellee, subject to its acceptance and approval, upon a certain form or order blank provided for that purpose, and to submit said order to the appellee for its approval and acceptance; and that Dockery had no power or authority to bind the appellee "by any contract in any manner or way."

In its rejoinder, the appellant denies the allegations with reference to Dockery's lack of authority and the appellee's lack of knowledge of the existence of the contract, and denies that the appellee in good faith sold and delivered the machines in accordance with the order of August 13, 1928, as constituting the only contract for the sale thereof.

The appellant, further answering the appellee's answer to the appellant's cross-complaint, alleges that if at the time the order form attached to the contract reached the home office of the appellee, the contract was not attached to the order form, and if at the time of the shipment of the machines the appellee's officers had no knowledge of the contract, then the contract was detached from the order form without the knowledge or consent of the appellant, and the order form accepted by the appellee as the contract between the parties was not the completed contract as executed, and, if Dockery had no authority to make the contract of August 14, 1928, there was no meeting of the minds of the parties.

The court took the case under advisement, and thereafter rendered judgment in favor of the plaintiff-appellee and against the defendant as prayed for in the appellee's complaint.

The trial court entered findings of fact and conclusions of law in part as follows:

1. That the allegations of the appellee's complaint, reply to the appellant's answer, and answer to the appellant's cross-complaint, are true.

2. That the consideration for the acceptance has not failed, in whole or in part.

3. That the appellee never entered into or ratified the collateral typewritten agreement of August 14, 1928.

4. That Dockery as salesman or agent or in any other capacity had no authority for and on behalf of the appellee to make the said typewritten agreement.

5. That the printed contract executed by Dockery was sufficient to put the appellant upon inquiry as to the agent's authority; that a statement limiting the agent's authority appeared in the printed contract; and that the appellant made no inquiry as to the agent's authority.

6. That the collateral agreement is an extraordinary guaranty or warranty, or one beyond the usage of the business in which Dockery as an agent was employed.

7. That the appellant had no right to assume that Dockery was authorized to make any extraordinary guaranty or warranty.

8. That Dockery had limited authority, as expressed in the printed contract; that in executing the collateral agreement, he exceeded his authority; and that the appellant had notice of such limiting and exceeding of authority.

There is sharp conflict in the evidence, and of course it is not incumbent upon this court to reconcile such conflict or to weigh the evidence; our sole duty is to determine whether there is any substantial evidence tending to support the findings of the court below. We are prepared to say, however, that the findings of the court are fully sustained by the evidence.

The principal question involved herein is whether Dockery had the authority to make the collateral agreement. The lower court found, in effect, that the sewing machine company was not estopped by anything that Dockery did. The appellant's executives admitted that they read the limitation of authority. This was not a case where the party dealing with the agent was ignorant of the extent of the agent's authority; on the contrary, we repeat, the appellant, through its executives, admits that it had notice of the limitation of Dockery's authority.

More than a century ago, Chief Justice Marshall laid down the rule of agency that is applicable in the instant case. In Schimmelpennich et al. v. Bayard et al., 1 Pet. (26 U. S.) 264, 290 [199, 220], 7 L. Ed. 138, that profound jurist, with characteristic lucidity, said: "It is believed to be a general rule, that an agent with limited powers cannot bind his principal when he transcends his power. It would seem to follow, that a person transacting business with him, on the credit of his principal, is bound to know the extent of his

authority. Yet, if the principal has, by his declaration or conduct, authorized the opinion that he had given more extensive powers to his agent than were in fact given, he could not be permitted to avail himself of the imposition, and to protest bills, the drawing of which his conduct had sanctioned. But the defendants in this cause cannot allege that they have been deceived."

So, in the instant case, it might well be said that the defendant-appellant, reading the plainly worded limitation of authority, "cannot allege that it has been deceived."

In Slocum v. New York Life Insurance Co., 228 U. S. 364, 374, 375, 33 S. Ct. 523, 527, 57 L. Ed. 879, Am. Cas. 1914D, 1029, the Supreme Court said:

"One who deals with an agent, knowing that he is clothed with a circumscribed authority and that his act transcends his powers, cannot hold his principal; and this is true whether the agent is a general or a special one, for a principal may limit the authority of one as well as of the other. * * *

"There was no evidence that the company itself treated the check as a partial payment or otherwise ratified the agent's acts. Indeed, the only permissible inference from the evidence was to the contrary."

In Inner Shoe Tire Co. v. Treadway et al. (C. C. A. 5) 286 F. 838, 840, a similar limitation of authority was involved. There the court said: "When the defendants read the orders which they signed, they were put on notice, as effectual as it was possible to give, that the salesman was without authority to procure the shipment of goods, except upon terms stated in such orders."

Similarly, in the instant case, we find nothing that would justify the conclusion that the company ratified the act of its agent Dockery, or that it was estopped from disputing his authority; indeed, the only permissible inference from the evidence is to the contrary.

There is nothing in the record to show that the appellee ratified Dockery's acts in the premises, or that it had knowledge of such unauthorized acts; and knowledge is essential to constitute ratification.

In Texas Co. v. Quelquejeu (C. C. A. 5) 263 F. 491, 494, the court said: "Hence it is incumbent upon every person dealing with an alleged agent to discover at his peril that such pretended agent has authority, and that such authority is in its nature and extent suf-

ficient to permit him to do the proposed act. Wheeler v. McGuire, 86 Ala. 398, 5 So. 190, 2 L. R. A. 808." ·

In its memorandum opinion, the lower court cited the case of Johns v. Jaycox, et al., 67 Wash. 403, 121 P. 854, 856, 857, 39 L. R. A. (N. S.) 1151, Ann. Cas. 1913D, 471. In its decision in that case, the Supreme Court of Washington, says:

"The correct principle, briefly stated, is that an agent under a general employment to make sales is impliedly authorized to employ only those means for the purpose usual to the business, and that the purchaser cannot safely assume that he has authority to make any extraordinary guaranty or warranty, or one beyond the usage of the business in which the agent is employed. [Many cases cited.]
* * *

"To hold as contended by counsel, that the appellant without knowledge or ratification should be estopped to question the guaranty because the respondents had placed themselves in a position where they must have the machines in reliance upon the guaranty, would be to hold that the principal would be bound in almost every instance by the unauthorized acts of the agent, however palpably beyond the scope of his employment. It would be in effect to say that though in law the purchaser had no right to rely upon a guaranty on its face beyond the scope of the agent's employment, yet, if he does so rely to his injury, the principal will be bound. The paradox is too plain to require further comment."

We might add, however, that the appellant has cited this court to several state cases that seem to be in conflict with the established principles of the law of agency, and in conflict with the Supreme Court of the United States and the various Federal Circuit Courts of Appeals. We are, of course, bound by the holdings of the federal courts.

The appellee objects to the consideration of the bill of exceptions or the question of the sufficiency of the evidence to justify this judgment or any of the trial court's findings in its favor, for the reason that the question was not presented to the trial court at the proper time for its determination, and no exception is shown by the record upon which such a "construction" can be predicated in the trial court. An examination of the record, however, satisfies us that such is not the case, and we have therefore considered the case on its merits.

In addition to the questions heretofore considered, it is contended by the appellant, in its specifications X and XI, that the court erred in two instances in admitting evidence over the appellant's objection. We have examined these specifications and are of the opinion that they are without merit.

■■ The chief objection that we have to the state of the record is that the findings of fact, instead of being in narrative form, as they should be, contain statements to the effect that the lower court found that the allegations of the plaintiff-appellee's pleadings are true, and that certain allegations are untrue, thus obliging this court to compare such pleadings with the findings of fact. We think that counsel who prepare findings for the trial court should do so in such a way as to enable the court to make such findings independent of any references to the pleadings or exhibits.

To summarize our views in this case, we believe that the appellant was at fault in disregarding the sentence in the order form, specifically warning all those dealing with the appellee's agents that such agents had no authority to make collateral contracts. A principal has the right to protect himself from being confronted and surprised with collateral contracts that his agent had no authority to make. It seems to us that the appellee, the principal in the instant case, expressed the warning as plainly as human language could make it. As for the appellant and its officers, in the language of Mr. Justice Strong, in Dows et al. v. National Exchange Bank of Milwaukee, 91 U. S. 618, 637, 23 L. Ed. 214, "however unfortunate their case may be, they cannot be relieved by casting the loss upon the plaintiff, who is at least equally innocent with themselves, and who has used the extremest precaution to protect its title."

Judgment affirmed.

WILBUR, Circuit Judge (concurring).

I concur in the judgment of affirmance for the following reasons:

The appellant seeks to have us review the sufficiency of the evidence to support the judgment of the trial court. The case was tried by the court, a jury having been waived. The bill of exceptions states that the trial occurred on the 2d of July, 1931; that on the 25th of August, 1931, the court filed its memorandum of authorities and decision in favor of plaintiff and against the defendant, to which ruling an exception was entered on behalf of the defendant. The bill of exceptions states that: "Thereafter, on the 26th day of August, 1931, plaintiff was granted an extension of time within which to file findings of fact and conclusions of law, for a period of thirty days from and after August 26th, 1931, and thereafter, on the 7th day of November, 1931, the court denied defendant's proposed amendments and additions to plaintiff's findings of fact and conclusions of law, to which ruling of the court the defendant, by its counsel, then and there duly excepted, and thereupon, on said 7th day of November, 1931, judgment was entered in favor of plaintiff and against the defendant."

The findings of fact, conclusions of law, and judgment, filed November 7, 1931, contained, among other findings, this general finding: "Now, after due deliberation and consideration, the court finds generally in favor of plaintiff and against defendant on all the issues raised by the respective pleadings, and further finds as follows:"

Then follow nine special findings of fact, the first of which is "that all of the allegations of plaintiff's complaint are true"; second, "that all of the allegations of plaintiff's reply to defendant's answer and plaintiff's answer to defendant's cross-complaint are true"; and, third, "that the consideration for said acceptances has not failed, either in whole or in part." The only material and ultimate issue of fact in the case was whether or not the consideration for the trade acceptances sued upon had failed. The court found as a fact that the consideration "has not failed, either in whole or in part."

The appellant claims that the supplementary agreement, referred to in the main opinion, made by the agent on behalf of the appellee, was a part of the contract of purchase and that, therefore, there was no contract at all as this part of the proposed agreement was rejected because in that event there was no meeting of the minds of the parties. This question calls for a consideration of sufficiency of the evidence to support the general finding of the court in favor of the plaintiff and the special finding that there was no failure of consideration. This matter cannot be reviewed on this appeal for several reasons: No motion for judgment because of the insufficiency of the evidence to sustain plaintiff's cause of action was made by the defendant at the conclusion of the evidence. Plaintiff, therefore, relies and must rely upon the rulings of the court made when it presented its special findings of fact which were at vari-

536

ance with those signed by the court. The findings claimed to have been presented on behalf of the appellant, although printed in the transcript, were not incorporated in the bill of exceptions and for that reason cannot be considered. McPherson v. Cement Gun Co., Inc. (C. C. A.) 59 F.(2d) 889. Furthermore, the request for findings, even if otherwise sufficient to raise the question sought to be presented here, was made long after the trial was concluded and after the court had announced its decision, and therefore the failure of the court to find the facts in accordance with the findings proposed by the losing party would not be subject to review. Edwards v. Robinson, 8 F.(2d) 726 (C. C. A. 9). Moreover, the making of special findings is discretionary with the trial court and no error can be predicated upon the failure of the court to make special findings of fact. White v. U. S. (C. C. A.) 48 F.(2d) 178; McPherson v. Cement Gun Co. (C. C. A.) 59 F.(2d) 889, supra; Ozark Pipe Line Corp. v. Decker (C. C. A.) 32 F.(2d) 66; Henry H. Cross Co. v. Texhoma Oil & Ref. Co. (C. C. A.) 32 F.(2d) 442. See, also, Merriam v. Huselton (C. C. A.) 45 F.(2d) 983, by Judge Sanborn, and numerous citations therein; Fleischmann Const. Co. v. U. S., 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624, and cases cited; Modoc County Bank v. Ringling (C. C. A.) 7 F.(2d) 535, and cases cited; Mercantile Mut. Insurance Co. v. Folsom, 18 Wall. (85 U. S.) 237, 248, 21 L. Ed. 827. Where the court not only makes a general finding as in the case at bar, but also makes certain special findings of fact, I do not believe that the failure to make other or different special findings of fact requested by the appellant can be viewed as erroneous, because the court having exercised its discretion in favor of making a general finding is not required to make any special findings whatever (authorities cited supra) and the mere fact that it does supplement its general findings by certain special findings cannot require it to make other or additional findings because the general finding already covers all issues not specifically found. See Meath v. Board of Mississippi Levee Commissioners, 109 U. S. 269, 3 S. Ct. 284, 27 L. Ed. 930. In fact, it has been uniformly held that under the statutory provisions regulating a trial where a jury is waived findings should be general or special and not both. Rev. St. § 649, 28 USCA § 773; British Queen Mining Co. v. Baker, etc., Min. Co., 139 U. S. 222, 11 S. Ct. 523, 35 L. Ed. 147; Corliss v. Pulaski County (C. C. A.) 116 F.

289; State Nat. Bank of Ft. Worth v. Smith (C. C. A.) 94 F. 605; Streeter v. Sanitary Dist. of Chicago (C. C. A.) 133 F. 124; U. S. v. Cleage (C. C. A.) 161 F. 85. It should be stated also that the denial of a request for a special finding is not reviewable unless the request is based on the ground that the evidence will sustain no other conclusion, otherwise, the denial is the mere exercise of discretion not reviewable on appeal. The rule in that regard is stated by the Circuit Court of Appeals of the Eighth Circuit in an opinion delivered by Judge Van Valkenburgh, Henry H. Cross Co. v. Texhoma Oil & Refining Co., 32 F.(2d) 442, 445, as follows: "In the absence of a request made to the trial court before the close of the trial to find the issues in favor of the requesting party on the ground that the evidence will sustain no other conclusion, we cannot review the sufficiency of the evidence to sustain the finding and judgment. Wear v. Imperial Window Glass Co. (C. C. A. 8) 224 F. 60; Allen, Collector, v. Cartan & Jeffrey Co. (C. C. A. 8) 7 F.(2d) 21; Pennok Oil Co. v. Roxana Petroleum Co. (C. C A. 8) 289 F. 416; Denver Live Stock Comm. Co. v. Lee (C. C. A. 8) 20 F.(2d) 531."

It should be added that the "defendants' proposed amendments and additions to findings of fact," although in part couched in the language of the pleadings, are nevertheless evidentiary instead of ultimate facts, and for that reason the request for their adoption by the court should have been denied. The rule in that regard is stated by Judge Van Devanter, speaking for the Circuit Court of Appeals for the Eighth Circuit in Anglo-American, etc., Co. v. Lombard, 132 F. 721, 733, as follows:

"What is treated by counsel as a special finding does not meet the requirements of the act of Congress (sections 649, 700, Rev. St. [U. S. Comp. St. 1901, pp. 525, 570 (28 USCA §§ 773, 875)]), as uniformly interpreted by the Supreme Court and the several Circuit Courts of Appeals. It does not respond to all the issues raised by the pleadings, and is therefore incomplete. * * * But a special finding of facts should be the equivalent of the special verdict of a jury, and should cover all the issues, so that in the event of proceedings in error, if the trial court's conclusions of law are deemed incorrect, and if the proceedings are otherwise without error, the appellate court may, under section 701, Rev. St. [28 USCA § 876], direct such judgment as the special finding requires, without the necessity of awarding a new trial.

Ft. Scott v. Hickman, 112 U. S. 150, 165, 5 S. Ct. 56, 28 L. Ed. 636.

"In actions at law, where a trial by jury is waived, the duty of finding the facts is placed upon the trial court. We have no authority to examine the evidence for the purpose of finding the ultimate facts, or of correcting or completing a special finding which is imperfect or incomplete. Sun Mutual Ins. Co. v. Ocean Ins. Co., 107 U. S. 485, 500, 1 S. Ct. 582, 27 L. Ed. 337; Lehnen v. Dickson, 148 U. S. 71, 77, 13 S. Ct. 481, 37 L. Ed. 373. To meet the requirements of the statute, as defined in the decisions of the Supreme Court and of the several Circuit Courts of Appeals, a special finding should be a clear and concise statement of the ultimate facts, and not a statement, report, or recapitulation of evidence from which such facts may be found or inferred. The ultimate facts must be so stated that, without inferences, or comparisons, or balancing testimony, or weighing evidence, the case may be determined by the application of pertinent rules of law. If any ultimate fact material to the issues is to be inferred from the whole evidence, or from other facts proved or admitted, the inference must be drawn by the trial court, and the fact must be stated in the finding. Like the special verdict of a jury, a special finding can present only questions of law. Barnes v. Williams, 11 Wheat. 415, 6 L. Ed. 508; Graham v. Bayne, 18 How. 60, 15 L. Ed. 265; Guild v. Frontin, 18 How. 135, 15 L. Ed. 290; Burr v. Des Moines [Nav. & R. Co.], 1 Wall. 99, 17 L. Ed. 561; Norris v. Jackson, 9 Wall. 125, 19 L. Ed. 608; Miller v. Life Insurance Co., 12 Wall. 285, 301, 20 L. Ed. 398; Crews v. Brewer, 19 Wall. 70, 22 L. Ed. 63; Tyng v. Grinnell, 92 U. S. 467, 472, 23 L. Ed. 733; Raimond v. Terrebonne Parish, 132 U. S. 192, 10 S. Ct. 57, 33 L. Ed. 309; British Queen Mining Co. v. Baker Silver Mining Co., 139 U. S. 222, 11 S. Ct. 523, 35 L. Ed. 147; Wilson v. Merchants' Loan & Trust Co., 183 U. S. 121, 126, 22 S. Ct. 55, 46 L. Ed. 113; Mercantile Trust Co. v. Wood, 8 C. C. A. 658, 60 F. 346; Kentucky, etc., Co. v. Hamilton, 11 C. C. A. 42, 63 F. 93; Minchen v. Hart, 18 C. C. A. 570, 72 F. 294; Burnham v. North Chicago St. Ry. Co., 23 C. C. A. 677, 78 F. 101; Packer v. Whittier, 33 C. C. A. 658, 91 F. 511; State Nat. Bank v. Smith, 36 C. C. A. 412, 416, 94 F. 605; American Nat. Bank v. Watkins, 56 C. C. A. 111, 119 F. 545; Powers v. United States, 56 C. C. A. 128, 119 F. 562."